# Exhibit 4

## Statutory Declaration of Xiong Zihan (Sydney)

I, **Xiong Zihan (Sydney)**, of Jiabeiye Bozheng Administrative Apartments, Beijing 10020, China, solemnly and sincerely declare the following.

I am a representative of Apenft Foundation ("**Apenft**"). I make this statement by way of statutory declaration in support of a potential insurance claim and to assist criminal investigations in relation to the wrongful conveyance of a Alberto Giacometti work of art known as *"Le Nez"* owned by Mr. Sun Yuchen ("**Mr. Sun**") and insured under a *"Homeowners & Private Collections"* insurance (policy number CG-CS4644).

*"Le Nez"* was purportedly sold on my direction by and on behalf of Apenft without any authorization or knowledge of Mr. Justin Sun, to Ithaka Trust and Mr. David Geffen (collectively "**Geffen**") by certain Los Angeles- based art brokers and dealers pursuant to various agreements as outlined below.

On 23 January 2024, without any authorization from Apenft or Mr. Sun, I represented Apenft to enter into an Exchange Agreement with Geffen, whereby Geffen and Apenft agreed to exchange certain artwork, with Geffen receiving the sculpture *"Le Nez"* from Apenft and with Apenft receiving ▇▇▇▇▇▇▇▇▇▇ (the "**Other Art Works**") from Geffen, plus a consideration of US$10.5M to be paid by Geffen to Apenft (see **Exhibit XZS-1** – a copy of the Exchange Agreement).

On 29 January 2024, without express authorization from Apenft or Mr. Sun, I represented Apenft to enter into a Bill of Sale on their behalf with Geffen, pursuant to which Apenft transferred *"Le Nez"* to Geffen (see **Exhibit XZS-2** – a copy of the Bill of Sale).

In or around February to March 2024, without express authorization from Apenft or Mr. Sun, I requested *"Le Nez"* to be shipped from an exhibition in Paris, France (where it was on exhibition at the time) to the custody of Mr. David Tunkl and his son Mr. Cole Tunkl, who are the owners of an art dealer named Ganymede International, Inc ("**Ganymede**") to a warehouse in New York City, USA (see **Exhibit XZS-3** – copies of the relevant email correspondence).

On 23 March 2024, without express authorization from Apenft or Mr. Sun, I represented Apenft to enter into the First Amendment to the Exchange Agreement (the "**First Amendment**") on behalf of Apenft and Mr Sun with Geffen, whereby the parties agreed that Geffen would transfer the cash consideration of US$10.5M to Ganymede in satisfaction of Geffen's obligation to make the cash payment to Apenft. It was understood that upon Ganymede's receipt of the US$10.5M cash, they would pay the same to the owner Mr. Sun in stable-coin (USDC). As Mr. David Tunkl and Mr. Cole Tunkl then wanted validation of Mr. Sun to the transaction, they requested the First Amendment to be counter-signed by Mr. Sun. In response to pressure from both David and

1

Cole, and under duress, it was at that stage that I forged the signature of Mr. Sun thereon (see **Exhibit XZS-4** – a copy of the First Amendment to the Exchange Agreement).

On 23 March 2024, upon the request of Mr. David Tunkl and Mr. Cole Tunkl, without express authorization from Apenft or Mr. Sun, I represented Apenft to also enter into an Authorization Agreement with Ganymede, pursuant to which the parties thereto agreed that Apenft instructed Geffen to pay the cash payment due to it to Ganymede, and Apenft authorized Ganymede to receive the US$10.5M cash payment on its behalf. Mr. David Tunkl and Mr. Cole Tunkl again requested the Authorization Agreement to be counter-signed by Mr. Sun. I therefore again, due to pressure being asserted on me to conclude the transaction, again forged the signature of Mr. Sun thereon (see **Exhibit XZS-5** – a copy of the Authorization Agreement).

The reason why I entered into the above agreements and forged the signature of Mr. Sun was because I was acting under the duress and pressure of Mr. David Tunkl and Mr. Cole Tunkl, who kept representing to me that they already had potential buyers for the Other Art Works being transferred as part of the sale deal and pressuring me to sign the agreements as quickly as possible. Upon their duress and insistence, and based on time pressure, I signed the above agreements on behalf of Apenft and also forged Mr. Sun's signature on the above agreements.

I believe that Ganymede, Mr. David Tunkl and Mr. Cole Tunkl were aware of the absence of authority on my part to enter into the transaction, as they knew that Apenft was not the legal owner of "*Le Nez*" at all material times, and the true owner Mr. Sun was not part of the negotiation nor a signatory to the original Exchange Agreement and the Bill of Sale for "*Le Nez*". Nor did they ever ask me for a Bill of Sale conveying title from Mr Sun to Apenft. Mr. David Tunkl and Mr. Cole Tunkl requested to cover any question or risk on title two months later by adding Mr. Sun as a signatory to the First Amendment and the Authorization Agreement in March 2024, which shows that they or at least someone was aware of the absence of authority on my part and the likely invalidity of the transactions in January 2024, in particular the Bill of Sale I purported to sign for "*Le Nez*" on behalf of Apenft.

In fact, the US$10.5M consideration was explained by me to Mr. Sun to be only a deposit to secure a transaction. Details of any transaction were never disclosed to him. The said sum is far below the sum of US$78M at which Mr. Sun purchased "*Le Nez*" in or around 2021.

All documents were prepared and provided to me by Ganymede (David and Cole Tunkl or their legal counsel). I never had any role or involvement in their preparation.

2

At no time had I ever had a conversation with Mr. Sun as regards the completion of the sale of "*Le Nez*", for any actual price or on any sale terms, other than ongoing conversations of discussion for a sale, which led to the US$10.5M deposit referred to above.

Laura Chang, an acquaintance who claimed to have legal background, who I introduced to the email conversation to falsely act as Apenft's legal representative, assisted me from inception and assisted the buyer team to falsely explain away Mr. Sun's involvement in Apenft.

After entering into the transaction, I repeatedly requested Mr. David Tunkl and Mr. Cole Tunkl to provide me with updates of the potential buyers of the Other Art Works but they kept delaying and/or refusing to provide me with positive answers (see **Exhibit XZS-6** – copy of the WhatsApp record between Mr. David Tunkl, Mr. Cole Tunkl and me from June to December 2024).

I confirm that at no time did I ever seek or was I given authority by Mr. Sun and/or Apenft to sign any of the above agreements in relation to the above transaction.

The first time Mr. Sun learned of a completed of a sale or saw any of these agreements or was made known of the actual transaction was when I provided copies of the agreements to him in December 2024 after I confessed this regrettable situation to him. The above transaction of "*Le Nez*" has been the subject of a fraud on my part and with the involvement of Mr. David Tunkl and Mr. Cole Tunkl. It was a wholly unauthorized sale, Apenft in fact never owned "*Le Nez*" and therefore any 'sale' of it is null and void (see also **Exhibit XZS-7** – a copy of a less formal statement signed by me on 19 December 2024 confirming the absence of authority on my part in the above transaction).

I sincerely now regret my involvement in this matter and have resolved to do what is required to make amends and ensure the proper restitution of "*Le Nez*" to its rightful owner, Mr. Sun.

And I make this solemn declaration conscientiously believing the same to be true and by virtue of the Oaths and Declarations Ordinance (Chapter 11 of the Laws of Hong Kong).

| | |
|---|---|
| **DECLARED** at | ) |
| | ) |
| in Hong Kong | ) |
| this 20th day of December 2024 | ) |

3