# Exhibit 5

# NAGY WOLFE APPLETON LLP

Tibor L. Nagy, Jr.
tibor@nagylaw.com

31 East 62nd Street, 6th Floor | New York, New York 10065 | (646) 494 - 4900

**VIA EMAIL**                                                                January 24, 2025

William L. Charron
Pryor Cashman LLP
7 Times Square, 40th Floor                    **CONTAINS CONFIDENTIAL INFORMATION**
New York, NY 10036
wcharron@pryorcashman.com

     Re:    January 2024 Exchange Transaction & December 2024 Harder Stonerock Letter

Dear Bill,

     We represent David Geffen and Ithaka Trust.[1] We write in response to the letter dated December 23, 2024 (the "Letter" or "Ltr.") sent by Harder Stonerock LLP ("HS" or "you") on behalf of your client Sun Yuchen Justin ("Mr. Sun"). In the Letter, HS claims that "the recent transaction for *Le Nez* by and between Mr. Geffen, on the one hand, and Apenft Foundation ('Apenft'), on the other hand, was fraudulent." The Letter fails to establish that the transaction (the "Transaction"), which closed over a year ago, was fraudulent. To the contrary, the record strongly suggests that Mr. Sun's present attempt to reclaim *Le Nez* (the "Work") is itself premised on false assertions—and appears to be motivated by seller's remorse, including because the two paintings that Mr. Geffen traded in the Transaction (the "Two Paintings") apparently have failed to sell. The record (i) refutes any basis for rescinding the Transaction and (ii) confirms that any further attempts to cloud title to the Work or otherwise interfere with Mr. Geffen's ownership of it would be in bad faith.

**I.    THE RECORD REFUTES MR. SUN'S NEWFOUND CLAIM THAT THE TRANSACTION WAS "FRAUDULENT"—A CLAIM HE MADE ONLY AFTER THE TWO PAINTINGS CONVEYED FOR THE WORK FAILED TO SELL**

     Mr. Sun now claims that (i) the Transaction was "fraudulent," (ii) "Apenft never owned *Le Nez*," (iii) Mr. Sun "only recently learned of the transaction," and (iv) Ms. Xiong (Sydney) Zihan ("Ms. Xiong") "never" was "authorized to represent APENFT for business transaction and contract signing matters."[2] The record refutes these assertions.

---

[1] Unless otherwise noted: (i) where applicable, all references to "Mr. Geffen" also refer to Ithaka Trust and (ii) all emphasis in quotations was added.

[2] Ltr. at 1, 51.

A. **Mr. Sun "Donated" The Work To Apenft In November 2021**

Mr. Sun acquired the Work in November 2021 at the Sotheby's Macklowe Collection auction.³ On November 15, 2021, Mr. Sun publicized that he paid "$78.4 million" for the Work:



On November 16, 2021, and contrary to his present claim that "Apenft never owned *Le Nez*," Mr. Sun publicly stated that the Work would be "donated" to Apenft:



---

³ *See* Angelica Villa, *Crypto Tycoon Justin Sun Buys $78 M. Giacometti at Sotheby's*, ARTnews (Nov. 16, 2021), https://www.artnews.com/art-news/market/justin-sun-buys-giacometti-sothebys-macklowe-collection-1234610241/.

Mr. Sun's donation of the Work was later confirmed by Apenft and publicly reported by multiple sources, including sources that quoted both Mr. Sun and Ms. Xiong.[4]

### B. Ms. Xiong Was A "Representative" Of Both Apenft And Mr. Sun, With Both Actual And Apparent Authority

Mr. Sun now attempts to rely on a statement by Ms. Xiong in which she claims that she "never" was "authorized to represent APENFT for business transaction and contract signing matters."[5]  The record refutes this newfound claim and is replete with evidence that Ms. Xiong had both actual and apparent authority to act on behalf of both Apenft and Mr. Sun.  For example, and without limitation, we note the following:

• Apenft repeatedly has held Ms. Xiong out as the "director of APENFT Foundation" and as responsible for its art curation.[6]

• Mr. Sun and Ms. Xiong have conducted joint interviews with news outlets in which Ms. Xiong identified herself as Apenft's "director," and Mr. Sun endorsed that representation.[7]

• Ms. Xiong repeatedly acted on behalf of Apenft and Mr. Sun, including by (i) directing and authorizing the transport and terms of the loan of the Work in September 2023 to the Giacometti Foundation exhibition in Paris and (ii) later directing the transport from the Paris exhibition to the United States and ultimately to Mr. Geffen—reflecting 16 months of movement of the Work at Ms. Xiong's direction before Mr. Sun raised any issue regarding Ms. Xiong's authority with respect to the Work.[8]

---

[4] *See, e.g.,* Press Release, *TRON's Founder Justin Sun Donated Giacometti's $78.4 Million Le Nez to the APENFT Foundation*, CryptoBriefing (Nov. 23, 2021), https://cryptobriefing.com/tron-founder-justin-sun-donated-giacomettis-78-4-million-le-nez-to-the-apenft-foundation/; Peter Wind, *Justin Sun Wins $78.4 Million Auction for Famous Alberto Giacometti Sculpture, Donates it to APENFT*, CoinCodex, Nov. 17, 2021, https://coincodex.com/article/12892/justin-sun-wins-784-million-auction-for-famous-alberto-giacometti-sculpture-donates-it-to-apenft/; Amah-Rose Abrams, *Crypto Billionaire Justin Sun Has Revealed Himself as the Buyer of the Macklowes' $78.4 Million Giacometti*, Artnet (Nov. 16, 2021), https://news.artnet.com/market/justin-sun-le-nez-78-million-2035562; Press Release from Crypto Briefing, *TRON's Founder Justin Sun Donated Giacometti's $78.4 Million Le Nez to the APENFT Foundation* (Nov. 23, 2021), https://cryptobriefing.com/tron-founder-justin-sun-donated-giacomettis-78-4-million-le-nez-to-the-apenft-foundation/; APENFT Tweet of Nov. 16, 2021 (announcing it has "collected" the Work, with its "collection [now] exceed[ing] $100 million!") (retweeted by Mr. Sun).

[5] Ltr. at 51.

[6] *See, e.g.*, APENFT Press Release, *APENFT Foundation Announces 2022 Open Call Theme*, Aug. 11, 2022, https://apenftorg.medium.com/apenft-foundation-announces-2022-open-call-theme-cd1ef6324435; APENFT Press Release, *APENFT Foundation Launches $100million "Art Dream Fund,"* Nov. 2, 2021, https://coinrivet.com/apenft-foundation-launches-100million-art-dream-fund/.

[7] *See, e.g.*, Pearl Fontaine, *H.E. Justin Sun and Sydney Xiong Bring the Digital and Corporeal with APENFT Foundation*, whitewall, July 25, 2022, https://whitewall.art/art/h-e-justin-sun-and-sydney-xiong-bring-the-digital-and-corporeal-with-apenft-foundation/.

[8] *See, e.g.*, Ltr. Ex. XZS-3, at 26-34.

Even HS's Letter could not avoid acknowledging that, at least prior to Mr. Sun's newfound version of events, Ms. Xiong was, in fact, a "representative of Apenft."[9] And, in her December 20, 2024 statutory declaration, Ms. Xiong continues to assert that "I am a representative of Apenft Foundation."[10]

### C. Mr. Sun Was Aware Of The Transaction—And Appears To Have Deleted/Spoliated At Least One Critically Relevant Document Reflecting That Awareness

In stark contrast to his new version of events, on December 18, 2024, Mr. Sun sent the following WhatsApp message to David and Cole Tunkl in a thread that included Ms. Xiong (the "WhatsApp Message"):



As shown above, by December 18, 2024, Mr. Sun was aware, in his own words, not only of the fact that the Work had been sold, but also that it was no longer in his possession and needed to be "reclaim[ed]." Mr. Sun's message also reflects his awareness that, before he could "reclaim" the Work, he needed to "cancel[] the deal."

---

[9] Ltr. at 1.

[10] *Id.* at 4.

Critically, Mr. Sun's message also confirms that he wanted to "cancel[] the deal" and "reclaim" the Work not because the Transaction was "fraudulent" or "unauthorized" (or any of the other excuses he is now relying upon), but because of "the prolonged delay in completing the transaction":

| Previous Position | Current Position |
|---|---|
| "Due to the prolonged delay in completing the transaction, I suggest canceling the deal." | "[T]he recent transaction for *Le Nez* … was fraudulent …. Mr. Sun … only recently learned of the transaction." |

If the Transaction really was unauthorized/fraudulent, Mr. Sun would have said so in his WhatsApp Message. He would not have referred to any "prolonged delay" in "completing the transaction"—to the contrary, he either (i) would not have been *aware* of any "prolonged delay" or any "transaction," or (ii) he would have considered any transaction to be fraudulent, not as something that should have been "completed" sooner. Nor would Mr. Sun have suggested "canceling the deal"—again, he either (i) would have been *unaware* of any "deal," or (ii) would have considered any "deal" to be fraudulent.

Mr. Sun's WhatsApp Message refutes his new version of events not only by what it says, but also by virtue of what it does *not* say. As noted above, if the Transaction really was unauthorized/fraudulent, Mr. Sun would have said so in his WhatsApp Message. Similarly, if Ms. Xiong really was unauthorized and operating behind his back, Mr. Sun would have said so—instead, his Whatsapp Message confirms his awareness that Ms. Xiong was communicating with the Tunkls about "the transaction" and "the deal."

Thus, for those and other reasons, Mr. Sun's WhatsApp Message decisively refutes his new version of events.

Tellingly, the WhatsApp transcript appended to the Letter—which spans six months and six pages of visible messaging—omits the text of Mr. Sun's December 18 WhatsApp Message:[11]

```
[18/12/24 ▯▯10:22:04] DAVID TUNKL: Sydney,
I'm at a doctors office, couldn't pick up the phone. I'm on the way to a dinner.
I truly feel I may not hear until tomorrow.
Like I said, I left a message to call me back. When ( and if they do tonight), I
will call you immediately!
[18/12/24 ▯▯11:39:06] Justin: ▯▯▯▯Justin
[18/12/24 ▯▯11:45:23] binbin: Justin▯▯▯binbin
[18/12/24 ▯▯11:45:32] +852 6339 6712: Justin▯▯▯+852 6339 6712
[18/12/24 ▯▯11:45:52] Justin: ▯▯▯▯▯▯▯▯▯
```

---

[11] The 11:45 timestamp of Mr. Sun's message in the transcript corresponds to the 7:45am timestamp in the screenshot of the WhatsApp Message further above.

That is because Mr. Sun *deleted* the WhatsApp Message:



We trust you immediately will work with your client to recover and preserve this and all other documents he has deleted concerning any of the subject matter raised in your Letter, including all documents he may have deleted concerning Ms. Xiong, the Work, Apenft, and the Transaction.

II.   **MR. SUN'S STATEMENT REGARDING "THE PROLONGED DELAY IN COMPLETING THE TRANSACTION" REFERS TO THE TUNKLS' FAILURE TO SELL THE TWO PAINTINGS**

The record confirms that Mr. Sun wants to "cancel the deal" not because the Transaction was "fraudulent" or unauthorized, but for a much simpler reason: money. Specifically, the Tunkls have tried for many months to sell the Two Paintings that were conveyed to Apenft, but they apparently have been unable to do so.[12] Numerous communications reflect Ms. Xiong's, Apenft's, and Mr. Sun's desire to sell the Two Paintings for as high a price as possible—as well as their frustration at the Tunkls' failure to do so.[13] In fact, the WhatsApp Message itself reflects this frustration: Mr. Sun's reference to "the prolonged delay in completing the transaction" is plainly a reference to the Tunkls' failure to sell the Two Paintings.

Because the Two Paintings have failed to sell, Mr. Sun now prefers to "cancel[] the deal." Respectfully, Mr. Sun has no right to cancel the deal, and Mr. Geffen will not be pressured into doing so.

Mr. Geffen has met all of his obligations with respect to the Two Paintings. As you know, there was no commitment by Mr. Geffen that the Two Paintings could be sold at all, much less for any particular minimum price. If other parties promised Apenft and/or Mr. Sun that the Two

---

[12] *See, e.g.*, Ltr. Ex. XZS-6, at 43-49.

[13] *Id.*

Paintings could be sold on certain terms, then Apenft and Mr. Sun should look to those parties for relief—and should cease their efforts to "reclaim" the Work from Mr. Geffen. Given the record, Apenft and Mr. Sun have no non-frivolous claims against Mr. Geffen, nor any non-frivolous claims to the Work.

### III. HS'S LETTER FAILS TO ADDRESS THE JANUARY 23, 2024 YINGKE LAW FIRM LETTER—AND MR. SUN'S SIGNATURE ON THAT LETTER

The Letter also ignores other indicia of the Transaction's validity. For example, the Letter fails to mention, much less address, Mr. Sun's signature on the January 23, 2024 letter agreement prepared by the Yingke Law Firm (the "Yingke Letter"). In the Yingke Letter, a copy of which is attached hereto as Exhibit A, Mr. Sun guaranteed that the Work is "solely owned by APENFT Foundation" and that the representations and warranties in the Exchange Agreement were "true and correct."

The Yingke Letter was signed by (i) Laura Chang, a Yingke attorney representing both "APENFT Foundation and Justin Sun, individually," (ii) Ms. Xiong, who signed on behalf of Apenft, and (iii) Mr. Sun himself. Critically, neither the Letter nor Ms. Xiong's two affidavits claim that Mr. Sun's signature on the Yingke Letter was forged. To the contrary, Ms. Xiong's statutory affidavit—which we can only assume was prepared with the assistance of Mr. Sun's counsel—specifically identifies March 2024 as the "stage" at which she purportedly forged Mr. Sun's signature:

> On 23 March 2024, without express authorization from Apenft or Mr. Sun, I represented Apenft to enter into the First Amendment to the Exchange Agreement …. As Mr. David Tunkl and Mr. Cole Tunkl then wanted validation of Mr. Sun to the transaction, they requested the First Amendment to be counter-signed by Mr. Sun. *In response to pressure from both David and Cole, and under duress, it was at that stage that I forged the signature of Mr. Sun thereon*.[14]

We trust that Ms. Xiong will not now change her story and claim that it was not "at that stage" in March 2024 that she forged Mr. Sun's signature, and suddenly claim that the "stage" was actually in January 2024, a point in time at which there was no purported "duress."

### IV. MR. SUN MUST CEASE ALL EFFORTS TO CLOUD TITLE TO THE WORK, SHOULD PROVIDE THE INFORMATION REQUESTED IN EXHIBIT B, AND SHOULD PRESERVE ALL RELEVANT DOCUMENTS

As I told your partner Paul Cossu, I am happy to speak to you (and to him) to discuss this matter further. However, the Letter indicates that Mr. Sun intends to (i) send "a report" to the "Federal Bureau of Investigation" and (ii) make "filings" with the Art Claim Database, Art Loss

---

[14] Ltr. at 1-2.

Register, and Art Recovery International."[15]  As shown above, your client's recent version of events is false, and we therefore expect that he has not and will not present his false "report" to the FBI and/or any false filings with the Art Claim Database, Art Loss Register, and Art Recovery International.  If your client has made any such reports or filings, please let us know so we can contact each relevant party and correct the record.

While I remain willing to speak to you and Paul, please know that we immediately will take all appropriate steps to correct and seek redress for (i) any efforts by your client to cloud title to the Work, and/or (ii) any other actions, whether taken by Mr. Sun directly and/or through entities he controls, that cause harm to Mr. Geffen.

I have attached as Exhibit B a list of basic questions and information requests related to the issues raised in the Letter.  As a party who claims to have "recently learned" that his $78 million sculpture has gone missing and is asking Mr. Geffen to return it, we expect your client will have no objection to providing the basic information we have requested.  If he is not willing to provide the information requested, please let us know why not.

Finally, please confirm that your client and all of his agents—which apparently include Ms. Xiong—are preserving all relevant documents, including WhatsApp, text, email, Signal, and all other electronically stored information.  Please confirm that Apenft is doing the same—and please let us know whether or not you represent Apenft.  Given the deletion that already has occurred, please (i) identify any other documents, apart from the WhatsApp Message, that have been deleted and (ii) confirm that you are undertaking all possible measures to recover the WhatsApp Message and any other deleted materials.

Mr. Geffen reserves all rights, and waives none.

Regards,

*Tibor L. Nagy, Jr.*

_____
Tibor L. Nagy, Jr.

---

[15] *Id.* at 1.