

PRYOR CASHMAN LLP

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806          www.pryorcashman.com

**William L. Charron**
Partner
Direct Tel: 212-326-0156
Direct Fax: 212-798-6927
wcharron@pryorcashman.com

May 30, 2025

<u>**VIA ECF**</u>

Hon. Analisa Torres
United States District Judge
500 Pearl Street, Courtroom 15D
New York, New York  10007

RE:      <u>***Sun v. Geffen et al.*, No. 25-cv-00995-AT (S.D.N.Y.)**</u>

Dear Judge Torres:

Plaintiff/counterclaim-defendant Sun Yuchen Justin ("Sun") and defendants/counterclaim-plaintiffs David Geffen and Ithaka Trust (together, "Geffen") respectfully submit this joint letter pursuant to ¶ 4 of the Initial Pretrial Scheduling Order dated February 5, 2025 (ECF No. 13).

1.      **Brief Description of the Case Including the**
       <u>**Factual and Legal Bases For the Claims and Defenses**</u>

**Sun's Position:**

This is an action for replevin, conversion and declaratory judgment to recover a well-known sculpture by the artist Alberto Giacometti known as *Le Nez*, which was stolen from Sun and is presently in the possession of Geffen in New York.  Sun, who lives in Hong Kong, purchased *Le Nez* at auction in 2021 for approximately $78 million (Geffen was the unsuccessful underbidder for *Le Nez* at the auction).  Sun has at all relevant times been *Le Nez*'s sole, lawful owner.

In or about late-2023 and early-2024, an art advisor who worked with Sun named Xiong Zihan Sydney ("Xiong") orchestrated an elaborate fraud that resulted in *Le Nez* being stolen from Sun and purportedly sold to Geffen.  Xiong has confessed to her theft, and she was arrested and has been in a Chinese detention center since February 2025.

As part of her fraud and theft, Xiong, *inter alia*, misrepresented *Le Nez's* ownership; misrepresented her authority to act for the 'owner' (which she claimed was a non-profit foundation known as APENFT that Sun has publicly promoted); forged Sun's signature to make it appear that he attested to APENFT's ownership and sale of *Le Nez*; and fictionalized that Sun and APENFT

# PRYOR CASHMAN LLP

Hon. Analisa Torres
May 30, 2025
Page 2

had a Chinese lawyer named "Laura Chang" representing their purported interests in selling *Le Nez*. None of this was true. Xiong appears to have pretended to be "Laura Chang" and to have communicated through a gmail.com account for "Laura Chang" that Xiong herself controlled.

Xiong (and "Chang") liaised with two U.S. art dealers named David and Cole Tunkl (the "Tunkls") and a U.S. art attorney named Ralph Lerner ("Lerner"). While the Tunkls held themselves out on paper as the agent for the seller of *Le Nez*, and Lerner held himself out as the Tunkls' legal counsel, information indicates that Geffen also was connected in the deal to both the Tunkls and Lerner. The Tunkls and Lerner are believed to have each represented Geffen in art deals in the past (the Tunkls, Lerner and Geffen are all highly sophisticated actors in the art market). Moreover, while the Tunkls were ostensibly acting as the agent for the purported <u>seller</u> of *Le Nez*, it appears that Geffen – as the purported <u>buyer</u> of *Le Nez* – paid the Tunkls an additional and undisclosed approximate *$2+ million* for their services in this matter.

In addition to Geffen's under-the-table payment to the Tunkls to make a deal for *Le Nez* happen, there were other indicia of impropriety. Xiong had Lerner and the Tunkls conceive and draft the deal documents for *Le Nez*, despite "Laura Chang's" supposed engagement. Indeed, "Chang" was mere window dressing. Lerner also initially wanted Sun to sign deal documents, but Xiong suspiciously told him to keep Sun's name out of the documents, and that she alone should sign as APENFT's "President." Xiong was not APENFT's president or even an employee. Evidencing Lerner's doubts about what Xiong was telling him, he later insisted that Sun sign an attestation document to the deal (which Xiong forged).

Discovery will further illuminate what happened between Xiong, the Tunkls, Lerner and Geffen. The facts as presently known, however, overwhelmingly support that *Le Nez* was stolen from Sun. Even if Geffen was a good faith purchaser, he is required to restitute *Le Nez* to Sun because "a thief cannot pass good title." *Bakalar v. Vavra*, 619 F.3d 136, 140 (2d Cir. 2010) (citations omitted). The burden is on Geffen to prove that Xiong did *not* steal *Le Nez*. *Id.* at 142 (citing *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 320-21 (1991)). Likewise, the burden was on Geffen to have thoroughly investigated *Le Nez's* provenance before buying it. *Id.*

This Court may exercise jurisdiction to quiet title pursuant to 28 U.S.C. § 1655 because Sun seeks to remove a cloud on the title of personal property that is located in this District. The Court also has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, 1655.

Geffen's counterclaims – spanning *288 paragraphs* of over-the-top invective and unfounded and irrelevant accusations and personal attacks against Sun – do nothing more than seek Geffen's own declaration of title to *Le Nez*. Geffen interposed his counterclaims to deliver a counter-narrative positing that Xiong is not actually a thief. That counter-narrative is misguided, particularly given Geffen's heavy reliance on his speculation that Xiong was never reported to the police by Sun or arrested. By the time Geffen filed his counterclaims, Xiong had been in a detention center in China for nearly two months. Geffen's counterclaims are baseless.



Hon. Analisa Torres
May 30, 2025
Page 3

**Geffen's Position:**

This is a case of seller's remorse. In January 2024, Sun, through non-party Apenft Foundation ("Apenft"), agreed to sell *Le Nez* to Geffen in exchange for $10.5 million and two paintings (the "Two Paintings"). For nearly a year after the deal closed, Sun and his art advisor Xiong tried to sell the Two Paintings. After they failed to find a buyer at the prices they wanted, Sun and Xiong contrived this fraudulent lawsuit, hoping to pressure Geffen into rescinding the deal or paying Sun. Sun, a crypto billionaire who refers to himself as "His Excellency,"[1] has been sued by numerous former employees who have alleged that he forced them to engage in "unethical and/or illegal business activities."[2] Sun and Xiong are now engaged in similar conduct here. Geffen has answered Sun's complaint, and has filed counterclaims seeking to put an end to Sun's contrived claims and to recover damages from Sun.

As a threshold matter, Sun's allegation of "theft" is frivolous. What, exactly, did Xiong purportedly steal? Xiong did not steal *Le Nez*: Geffen has it, and he paid for it. Nor did Xiong steal the Two Paintings or the $10.5 million that Geffen paid: *Sun has the paintings and the money*, and he's had them both for over a year. Throughout that year, Sun tried to sell the Two Paintings. After they failed to sell, Sun's prior attorneys (Harder Stonerock LLP) sent Geffen a letter offering to return the Two Paintings and the $10.5 million, and demanding that Geffen return *Le Nez*. There is no "theft" here. There is only seller's remorse.

The reason Sun clings so desperately to a claim of "theft" is revealed by his position statement:

---

[1] Sun refers to himself as "His Excellency" on Twitter, where his handle is "H.E. Justin Sun" (*i.e.*, His Excellency Justin Sun), and on his personal website, www.hejustinsun.com. Numerous relevant documents in this case contain the "His Excellency" or "H.E." moniker. Sun also insists that his employees refer to him as "His Excellency." *See, e.g.,* https://www.theverge.com/c/22947663/justin-sun-tron-cryptocurrency-poloniex. Sun apparently has referred to himself as "His Excellency" since 2021 when he briefly assumed the role of Grenada's Ambassador to the World Trade Organization ("WTO"). Sun continues to use the moniker even though his term as Grenada's Ambassador terminated in 2023. *See* https://fortune.com/crypto/2023/03/31/his-excellency-sec-lawsuit-justin-sun-grenada-diplomat-wto/. Upon information and belief, Sun purchased his ambassadorship from a Grenadian official for $500,000. *See* https://www.thenewtodaygrenada.com/local-news/nnp-caught-selling-diplomatic-passports/.

[2] *See, e.g., Zhimin v. Rainberry, et al.*, No. CGC-21-595792 (Ca. Sup. Ct. Oct. 5, 2021) at Dkt. 1, Complaint ¶ 1; *Hall, et al. v. Rainberry, et al.*, No. CGC-19-580304 (Ca. Sup. Ct. Oct. 28, 2019) at Dkt. 1, Complaint ¶ 1. Sun also has been sued by the Securities & Exchange Commission (the "SEC") for fraud and market manipulation. *See SEC v. Sun, et al.*, No. 23-2433 (S.D.N.Y. Mar. 22, 2023). The SEC dropped its case only after Sun made a $30 million donation to President Trump's cryptocurrency company, World Liberty Financial. *See* https://www.bloomberg.com/news/articles/2024-11-29/trump-s-crypto-project-was-a-bust-until-justin-sun-stepped-in?embedded-checkout=true. As of March 17, 2025, Sun had invested over $75 million in Trump's World Liberty Financial. https://www.cnbc.com/2025/03/17/trump-world-liberty-financial-crypto-sold-550-million-in-tokens.html. World Liberty Financial has said that it "owes much of its early success to Justin [Sun]." https://finance.yahoo.com/news/founder-trumps-world-liberty-financial-074249116.html.

# PRYOR CASHMAN LLP

Hon. Analisa Torres
May 30, 2025
Page 4

> "Even if Geffen was a good faith purchaser, he is required to restitute *Le Nez* to Sun because 'a thief cannot pass good title.'" *Bakalar v. Vavra*, 619 F.3d 136, 140 (2d Cir. 2010)."

But *Le Nez* was not stolen. In *Bakalar*, the art at issue was "artwork stolen by the Nazis from Jews." *Bakalar*, 619 F.3d at 140. Here, by contrast, Sun admits he was "interest[ed] in selling *Le Nez*," signed a "Good Title Letter" "addressed to Geffen . . . stating that *Le Nez*" was unencumbered, and received payment for the work. (ECF No. 1 ¶¶ 10, 61, 89.) There is no theft here—only a sham lawsuit that does not remotely resemble *Bakalar*.

In any case, if Sun persists with his claims, it is beyond dispute that Geffen is a good-faith purchaser. While it is clear that Xiong had actual authority from Sun, she had apparent authority, too. In Sun's own words, Xiong was "liaison for him to the art world." (ECF No. 1 ¶ 41.) In fact, it was Xiong who made the winning bid at Sotheby's, acting as Sun's agent, when he initially acquired *Le Nez*. And Sun's assertions about purported "indicia of impropriety" are as baseless as his claim of "theft." Sun admits he wanted to sell the work (ECF No. 1 ¶ 10); he approached Geffen about selling it (through the Tunkls); and Geffen paid a substantial sum for the work, in a transaction that was handled by a top-tier law firm specializing in such transactions.

The only improprieties here are the glaring ones that Sun has committed. Although this lawsuit has just begun, Sun already has been forced to admit that he purposefully "deleted" critically relevant evidence, including WhatsApp messages that he had with the Tunkls in December 2024. (ECF No. 1 ¶ 99.). One of the WhatsApp messages that Sun deleted, a copy of which exists today only because one of the Tunkls fortuitously took a screenshot of it before Sun deleted it, directly refutes Sun's frivolous claim that he was unaware of the sale of *Le Nez* notwithstanding his receipt of the Two Paintings and the $10.5 million from Geffen more than a year ago. Moreover, in November 2024, Xiong expressly told the Tunkls that she and Sun were contriving this fraudulent lawsuit because they had been unable to sell the Two Paintings. These are but a few examples of a record that already is rife with evidence of sanctionable conduct. Sun, who previously has been sanctioned in U.S. litigation,[3] should withdraw this bogus lawsuit.

## 2. **Contemplated Motions**

Sun does not anticipate making any motions at this time.

Geffen anticipates that he may file the following motions:

- Motions seeking the issuance of Letters of Request pursuant to the Hague Evidence Convention, given the presence of relevant third parties abroad, including in Singapore (where Apenft is based) and China (where Xiong is based).

---

[3] ECF No. 20-6. In addition to the contemplated motions noted below, Geffen notes that he has sent a Rule 11 letter to Sun. If Sun persists with his frivolous claims, and fails to rectify his spoliation of relevant evidence, Geffen anticipates additional motion practice to address those issues.



Hon. Analisa Torres
May 30, 2025
Page 5

- A motion for summary judgment at the close of discovery.

### 3.  **Prospect for Settlement**

The parties do not foresee any reasonable prospect for settlement at this time, but remain open to engaging in settlement discussions as this action progresses.


Respectfully submitted,

PRYOR CASHMAN LLP                         NAGY WOLFE APPLETON LLP


*/s/  William L. Charron*                    */s/  Tibor L. Nagy, Jr.*
William L. Charron                          Tibor L. Nagy, Jr.
*Attorneys for Plaintiff*                    *Attorneys for Defendants*
*and Counterclaim Defendant*                 *and Counterclaim Plaintiff*