# NAGY WOLFE APPLETON LLP

Tibor L. Nagy, Jr.

31 East 62nd Street, 6th Floor | New York, New York 10065 | (646) 494 - 4900

tibor@nagylaw.com

**VIA ECF**                    **MEMO ENDORSED**                    February 17, 2026

Hon. Gary Stein, U.S.M.J.
United States District Court (S.D.N.Y.)
500 Pearl Street, Room 702                    **GEFFEN'S LETTER MOTION TO COMPEL**
New York, NY 10007

Re:    *Sun v. Geffen*, No. 1:25-cv-00995

Dear Magistrate Judge Stein:

On behalf of Defendants/Counterclaim-Plaintiffs David Geffen and Ithaka Trust ("Geffen"), we respectfully write pursuant to Chamber Rule II.C to seek discovery relief regarding Plaintiff/Counterclaim-Defendant Justin Sun's ("Sun") refusal to search for and produce documents from (i) Cindy Louie, (ii) Elodie He, and (iii) his personal Gmail. Geffen respectfully requests that the Court address these issues at the upcoming February 25 conference.

## I.    RELEVANT BACKGROUND

This dispute concerns a transaction exchanging an artwork known as *Le Nez* for $10.5 million and Two Paintings, between (i) Sun and Apenft, an art-related foundation that Sun founded and (ii) Geffen. Sun admits that in 2021 he publicly announced that he "donated" *Le Nez* to Apenft. (ECF 1 ¶ 29; *see also* ECF 20 ¶¶ 126-27.) He also admits that he publicly held Sydney Xiong out as his "art market" "advisor," and his "liaison to the art world." (ECF 1 ¶ 41.) He further admits that he wanted to sell *Le Nez*, asked Xiong to find him a buyer, and, in January 2024, signed a letter addressed to Geffen at Xiong's behest stating that title to *Le Nez* was clear. (ECF 1 ¶¶ 45-47, 61.) Both Sun and Apenft also held out Xiong as Apenft's "Art Director." (ECF 20 ¶¶ 67-81.)

Sun acknowledges receiving the cash component of the transaction[1] and communicating with Xiong about the Two Paintings (ECF ¶ 216)—communications that, to date, he has not produced. The Tunkls spent months trying to sell the Two Paintings with Xiong. (ECF 22 ¶¶ 175, 180.) On December 18, 2024, after the paintings failed to sell at prices he wanted, Sun messaged the Tunkls on WhatsApp, stating: "Due to the prolonged delay in completing the transaction, I suggest cancelling the deal." (ECF No. 20-2.) Sun promptly deleted that message. (ECF 1 ¶ 99.) He sent and deleted another message on December 17, 2024. (ECF 1 ¶ 192; ECF 58 at 3 & n.8.)

Sun now claims that Xiong is a "thief," that she had authority to find an interested buyer but not to "negotiate" on his behalf, and that Xiong is now in prison in China. (ECF 1 ¶¶ 41, 47; ECF 22 at 1-2.) Sun has Xiong's phone, and has produced documents stating he has her laptop. He is also producing documents on the "Tron system." In addition to such documents, Sun has agreed to produce Apenft's documents, which he has stated are stored on Tron's system.

On December 16, 2025, however, Sun for the first time revealed that the Apenft email addresses he would be searching did not include any individual people's addresses: all were generic accounts (*e.g.*, airdrop@apenft.org, contact@apenft.org, etc.). At a December 18 meet-and-confer, Geffen asked Sun to produce the @tron.network emails of, *inter alia*, Cindy Louie and Elodie He. As discussed further below, Louie has been Sun's personal assistant for the past seven years, and He worked for Apenft and was Xiong's direct report during the period at issue. Both

---

[1] Sun has been inconsistent with respect to whether he received the full $10.5 million (as his lawyers admitted before this litigation (ECF 20-3 at 3)), or only $10 million (which he now claims in this suit (ECF 1 ¶ 89)).

sent or received multiple emails about Sun's art dealings. Sun took the request under advisement.

At that same December 18 meet-and-confer, Geffen and Sun reached impasse on Sun's refusal to search his "representative" Steve Liu's phone. Geffen moved to compel Sun to search it, and the Court granted Geffen's motion on February 9, 2026. (ECF 85 at 2-4.)

On January 30, 2026, Sun produced 485 documents. That production included multiple relevant messages involving Louie and He, as well as Sun's personal Gmail account. The parties met-and-conferred about Geffen's request for Sun to search these three accounts on February 11.[2] In an email sent February 13, Sun confirmed that he would not do so absent a court order.

## II. SUN SHOULD BE ORDERED TO SEARCH FOR AND PRODUCE DOCUMENTS FROM LOUIE'S, HE'S, AND HIS OWN GMAIL ACCOUNTS

As he did with Liu (*see* ECF No. 85 at 4), Sun continues to resist producing documents from custodians or repositories he concededly controls, even where they indisputably have relevant and unique documents. Sun contends searching these accounts would be unduly burdensome—despite failing to marshal evidence of burden—because he *assumes* other custodians *may* produce *some* of their other relevant documents. As this Court held last week, the mere existence of "duplicate information to be produced from other custodians is not a good reason … to deny Geffen his requested discovery." (ECF No. 85 at 3.) The Court should reaffirm that conclusion and order Sun to search for and produce documents from Cindy Louie, Elodie He, and Sun's personal Gmail.

### A. Cindy Louie

Cindy Louie has been Sun's personal assistant for the past seven years, fully covering the period at issue in this case. (Ex. A.) Louie corresponded extensively for Sun on art-related topics, and specifically about *Le Nez*. She sent and received emails on Sun's behalf without copying him, including multiple emails with no other custodians.[3] Louie should be added as a custodian.

Notably, while Sun now claims that Xiong secretly transacted to sell *Le Nez* without his knowledge in January 2024, emails involving Louie and Xiong tend to refute that assertion. For example, in April 2024, after the deal closed and Sun had received the cash consideration, Xiong emailed his insurance carrier and asked that the carrier remove *Le Nez* from Sun's art insurance policy (the "Insurance Removal Email")—hardly the action of a thief seeking to keep her allegedly unauthorized sale of *Le Nez* secret from Sun. (SUN-LENEZ-00000085; -1656.) In addition, Xiong copied Louie on the Insurance Removal Email. Based on the emails Sun has produced thus far, Louie did not raise any objection. For this reason alone, Louie should be treated as a custodian.

Louie also exchanged multiple emails with Sotheby's, the Giacometti Foundation, the Art Loss Registry, and others about *Le Nez*. (*See, e.g.*, SOTHEBYSGEFFEN_01065 at -1067, -1071; *id.* at -1916; SUN-LENEZ-0000-0235; -0666; -1261; -1394; -1802.) Many of her emails—*e.g.*, emails about the opening of Sun's account at Sotheby's, and Sun's early 2025 insurance claims for the supposed loss of *Le Nez* (*see supra* n.3)—included neither Sun nor any other current custodian.

Sun does not dispute that Louie sent relevant emails. Nor does he deny that Louie has multiple emails related to *Le Nez* that do not copy Sun's other custodians. Sun's January 30

---

[2] Geffen also asked Sun to make Louie and He available for depositions. Sun disputes he controls He, and refused to agree to make Louie available—but agreed to revisit the issue should this Court order their documents to be searched.
[3] (*E.g.*, SUN-LENEZ-00000916; -935; -938; -940; -942; -945; -1787; -1802; SOTHEBYSGEFFEN_000121, -140.) Sotheby's and Sun have designated discovery documents cited herein as "Confidential" or "Highly Confidential," preventing their filing at this time. Geffen will bring the documents referenced to the conference.

production included 24 such documents—which were only produced because they were attached to custodian emails.  Nonetheless, Sun argues that producing Louie's emails would be unduly burdensome, apparently because he assumes some will be produced through other custodians.  Sun "cannot object to searches on burden grounds without substantiating [his] burden claim." *Felder*

*v. Warner Bros. Discovery*, 2025 WL 1718098, at *10 (S.D.N.Y. June 20, 2025).  And this Court already rejected the mere possibility of "duplicate information" as insufficient to deny discovery. (ECF No. 85 at 3.)  Here, Geffen has identified multiple highly relevant emails unique to Louie.

### B. Elodie He

He should be treated as a custodian because (i) the record establishes He sent and received relevant emails concerning this dispute, (ii) He's emails are directly relevant to the role that Xiong played at Apenft, and (iii) Sun has failed to establish any undue burden in adding He as a custodian.

Sun admits that Xiong was his art "advisor" and "liaison," but the parties dispute Xiong's role vis-à-vis Apenft.  He's emails are relevant to that issue because, among other things, Sun's counsel confirmed during the parties' meet-and-confer that He reported directly to Xiong during the period at issue.  Like Xiong, He's LinkedIn lists Apenft.  (Ex. B.)  He's emails therefore are relevant to the role that Xiong, to whom He reported, played at Apenft.

Documents produced to date confirm the relevance of He's emails.  For example, both Xiong and He were introduced to Sotheby's as "work[ing] for Apenft" on its "Art related things." (SOTHEBYSGEFFEN_00340.)  Sotheby's emails also show He and Xiong were involved in "press coverage" about Sun's art collection and his status "as the buyer of" *Le Nez*, including coordinating his "video interview," and directing Sotheby's "outreach to the Giacometti Foundation [to] let them know Justin's acquisition of le Nez and our willingness to loan" it. (*Id.* at -1116.)  He was also involved in subsequent emails arranging *Le Nez*'s display in Paris with the Giacometti Foundation (ECF 34-4), a display Sun himself promoted with Apenft (ECF 34-7).

During the parties' meet-and-confer, Sun argued that He should not be added as a custodian because the 485 documents he produced on January 30 did not include any emails unique to He. But Sun's January production does not comprise the universe of relevant documents.  On the contrary, Sun has yet to produce the bulk of his documents: Sun intends to do so by April 3.  Sun also has included only three individuals as custodians: Steve Liu, Syndey Xiong, and Sun himself. The only other emails Sun has included are generic Apenft email addresses (*e.g.*, contact@apenft).

Given this record, Sun must be ordered to search and produce He's documents.  Sun does not dispute relevance.  His only objection is burden, assuming overlap with Xiong's emails.  With "[t]he burden … on Sun to justify curtailing discovery" of He's emails, he once again "has failed to meet that burden" by proving it, instead relying on a mere "prediction that" her emails will "duplicate information to be produced from other custodians." (ECF 85 at 3.)  That is not enough.

### C. Sun's Personal Email Address

Sun's January 30 production included multiple relevant emails sent to or from his personal Gmail.  (*See, e.g.*, SUN-LENEZ-00000613.)  That email was used to create an Art Loss Register account and received emails regarding efforts to register *Le Nez* as stolen.  (*Id.* at -0655.)  At least one such email lacked any other Sun custodians.  (*Id.*)  Sun's only basis for refusing to search this email account is that its number of relevant documents is unknown, and other custodians may yet produce them.  But as with Louie and He (and as with Liu's phone), that argument cannot justify Sun shielding an account engaged in multiple known relevant communications, some not involving other Sun custodians.  (*See* ECF No. 85 at 3.)  Sun must search his personal Gmail address.

Respectfully submitted,

_____

Tibor L. Nagy, Jr.

*Counsel for David Geffen and Ithaka Trust*

Application granted. The parties are directed to prepare to discuss these topics at the upcoming February 25, 2026 conference. Plaintiff shall file any written response to this letter by no later than Friday, February 20, 2026.

Dated: February 19, 2026
       New York, New York

SO ORDERED:

_____

HON. GARY STEIN
UNITED STATES MAGISTRATE JUDGE

# Exhibit A

## Contact

www.linkedin.com/in/cindy-louie-b85b5a109 (LinkedIn)

## Top Skills

Microsoft Office
Executive Support
Executive Calendar Management

# Cindy Louie

Personal/Executive Assistant to H.E. Mr. Justin Sun
Singapore

## Experience

**TRON DAO**
Personal Assistant/Executive Assistant to H.E. Mr. Justin Sun
January 2019 - Present (7 years 2 months)
Singapore

**WSP USA**
Sr. Administrative Assistant
May 2018 - January 2019 (9 months)
San Francisco, CA

---

## Education

**Capuchino High School**
High School · (1987 - 1990)

# Exhibit

## Contact

www.linkedin.com/in/elodie-siyu-he-105820105 (LinkedIn)

## Top Skills

Exhibition Management
Business Development
Social Media Marketing

# Elodie Siyu He

APENFT FOUNDATION
London Area, United Kingdom

## Summary

I've carved a unique path at the intersection of art and technology, merging my passion for aesthetics with a curiosity for fintech and digital assets. My career started with working on groundbreaking NFT exhibitions and independently curating the first industry-recognized panel talk on NFTs and art, and later grew into leading multi-million-dollar art projects from conception to completion. I've honed my project management skills to simplify the complex and make visionary ideas achievable—all with agile execution.

As much as I loved working in the art world, I was increasingly drawn to the transformative power of technology. The dynamic, fast-paced nature of fintech and digital assets offered me the chance to explore uncharted territories and make a broader impact. This drive led me to transition into Web 3.0, where I now build cross-industry projects, enable borderless payments, and spot trends before they emerge. I'm here to make an impact.

My work has caught the eye of top platforms like Artsy, JingCulture&Crypto, and VOGUE.CN, showcasing my commitment to shaping the future of the creative and financial worlds.

## Experience

**TRON Foundation**
APENFT Project Manager
August 2021 - Present (4 years 7 months)
Beijing, China

**Block Create Art**
Marketing And PR Specialist
January 2021 - July 2021 (7 months)
Pékin, Chine

Page 1 of 3

JW Anderson
Product Development Accessories intern
August 2019 - October 2019 (3 months)
London, Royaume-Uni


BBSP
Responsable CRM et Marketing
January 2019 - July 2019 (7 months)
Région de Paris, France


Maison Georges Larnicol
Sales
December 2016 - May 2018 (1 year 6 months)
Bath, United Kingdom

Welcoming customers, building relationship with them and analysing their needs

Offering solutions and presenting products

Managing stock and creating displays

Taking responsibility for transactions, following hygiene rules, as well as tidiness and cleanliness


JOSEPH
Assistant showroom
January 2018 - January 2018 (1 month)
London, Royaume-Uni


Roland Mouret
Intern
June 2017 - June 2017 (1 month)
Paris Area, France

Managed and visual merchandised all samples in the showroom

Assisted styling and dressing models

Ensured the swift running of showroom and smooth changeover of appointments

Supported the wholesale team with various administrative tasks


David Shepherd Wildlife Foundation (DSWF)
Gallery Assistant
October 2014 - October 2014 (1 month)
Shalford

One week experience

## Education

### University of Bath
International Management and Modern Language(French) · (2016 - 2020)

### ESCP Europe
Bachelor's Degree, Master in Management · (2018 - 2018)

### St Catherine's School, Bramley
A-Levels, Art; French; Business Studies; Mathematics · (2014 - 2016)