# Exhibit 1

## CAHILL GORDON & REINDEL LLP

32 OLD SLIP
NEW YORK, NY 10005

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM

| 900 16th STREET, N.W. Suite 500<br>WASHINGTON, DC 20006<br>(202) 862-8900 | 221 W. 10th STREET<br>WILMINGTON, DE 19801<br>(302) 884-0000 | 20 FENCHURCH STREET<br>LONDON EC3M 3BY<br>+44 (0) 20 7920 9800 |
|---|---|---|

**VIA ECF**                                                                         March 10, 2026

Hon. Gary Stein, U.S.M.J.
United States District Court, S.D.N.Y.
500 Pearl Street, Room 702
New York, New York 10007

   Re:  <u>*Sun* **v.** *Geffen* (Case No. 1:25-cv-00995) (AT) (GS)</u>

Dear Judge Stein:

  Together with the firm of Pryor Cashman LLP, we represent plaintiff/counterclaim-defendant Justin Sun ("Sun") against defendants/counterclaimants David Geffen and Ithaka Trust (collectively, "Geffen") in the above referenced action. We write in response to Geffen's letter motion dated March 5, 2026, seeking an order to compel Sun to review (i) documents using Geffen's belated, overbroad proposed search terms, and (ii) all of Sun's communications with Sydney Xiong ("Xiong"). For the reasons set forth below, Geffen's requests should be denied.

  **<u>Relevant Background.</u>** Geffen's motion for expansive further document collections serves no legitimate discovery purpose and instead appears calculated solely to harass and impose needless burden. As explained below, Geffen's proposed terms are facially overbroad, relying on generic terms (*e.g.*, *Auction*, *Buyer*) and the first names of people associated with Sun (*e.g.*, *Zihan*, *Sydney*) with no limiting modifiers to focus hits on potentially relevant materials. Sun's search terms, by contrast, target the same subject matters Geffen purports to seek while eliminating clearly overinclusive terms and employing reasonable modifiers to focus the searches on relevant matters, avoid undue burden, and ensure discovery remains proportional to the needs of the case.

  As Geffen has known since the start of this case, Sun faces several logistical constraints that significantly affect the mechanics and burden of discovery. *First*, all of Sun's data is subject to foreign law and must be reviewed by Hong Kong or Chinese counsel to ensure that production complies with local legal requirements. *Second*, as we informed Geffen in September 2025, because of the sensitive nature of the information contained in the custodial files for Sun and another custodian, Steve Liu ("Liu"), their data could not be fully imaged and uploaded to a review platform. Instead, the data must be collected through a targeted search protocol. As a result, collecting their documents or generating new hit reports is not simply a matter of running search terms against a dataset already hosted on a discovery platform. Rather, it requires in-person sessions in which the search terms are manually run to extract data from Sun's and Liu's accounts. For that reason, reaching finality on search terms before undertaking full document collection was essential to avoid repeated and unnecessary collection sessions. Rather than taking these constraints into account and cooperating towards a proportional discovery approach, Geffen has repeatedly attempted to use them to force additional rounds of collection and review intended only to impose substantial and unnecessary burden.

-2-

Geffen has sought to create impossible situations for Sun from the outset.  In September 2025, the parties jointly requested to extend the discovery deadline in recognition of the "delays attendant to the international nature of this dispute."  ECF No. 41 at 1.  Of course, Sun is the only party that faces additional burden due to the fact that his documents are located in foreign jurisdictions.  Nonetheless, on November 18, 2025, weeks after that joint request was granted, and notwithstanding that Geffen had not produced a single document in this case, Geffen filed a motion seeking an order imposing a unilateral expedited document production schedule for Sun.

While that motion was pending, on December 16, 2025, Sun provided Geffen with a comprehensive hit report reflecting results for Sun's initial 16 proposed search terms and Geffen's 86 proposed search terms as run across multiple data sources for Sun, Liu, Xiong, and APENFT.  As Sun explained when transmitting that hit report, Geffen's proposed terms were overbroad, unduly burdensome, and not reasonably designed to identify responsive material.  In an effort to compromise, Sun proposed a revised set of 57 search terms, including Chinese translations of 34 relevant terms.  This proposal retained the majority of Geffen's proposed terms while removing overbroad terms not reasonably calculated to identify relevant documents and applying reasonable modifiers and date restrictions to certain terms.

At the time Sun sent this compromise proposal, Geffen's demand for a January production deadline for Sun remained pending.  Given the possibility of that deadline and the manual collection burdens described above, Sun asked Geffen to provide prompt feedback on the compromise search terms so that Sun could proceed with document collection, review, and production.  At a meet and confer on December 18, 2025, Geffen indicated that he may want to modify certain of the search terms and also propose additional Chinese terms, but insisted he would not provide those comments unless Sun first generated yet another hit report for Sun's search term list.  We explained that additional hit reports could not be produced without in-person searches from the relevant devices.  We further explained that Geffen was placing Sun in an unworkable position.  On the one hand, Geffen was demanding that Sun complete document productions on an accelerated schedule.  On the other hand, Geffen was demanding a prolonged and iterative hit-report process before Sun could begin collecting documents.  We informed Geffen we could not continue to negotiate search terms and meet the deadlines that Geffen sought from the Court; we noted that if Geffen withdrew his request for a January production deadline, we could continue negotiating search terms.  Geffen refused.

The next day, the Court ordered interim document production deadlines for Sun, as Geffen had requested.  To meet those deadlines, Sun moved forward with document collection.  Faced with Geffen's refusal to provide any comments to the compromise proposal and the then-looming production deadlines Geffen had insisted upon, Sun had no choice but to proceed with collecting documents using his search term set.  As expected, the manual collection process was highly burdensome.  Collecting data from Sun's cell phone required a three-day extraction process attended by Sun, the e-discovery vendor, and Sun's counsel, where terms were manually run on an application-by-application basis to pull the relevant data.

On February 11, pursuant to this Court's order, Sun served a report reflecting hit counts for the search terms that Sun had used to conduct document collection and begin his review.  As the report reflects, Sun's search terms hit on roughly 90,000 documents.  In response, Geffen has

proposed another set of facially overbroad terms—including multiple new terms not included in Geffen's original search term proposal (first served on June 30, 2025)—along with new Chinese terms. Geffen purports to justify this new proposal almost entirely based on hit counts from the hit report Sun provided *in December*—not the new hit report that Geffen had demanded as a purported pre-requisite for providing search term comments. Besides gamesmanship, there is no reason Geffen could not have offered these proposals in December, when Sun specifically requested them so that search terms could be finalized and the collection completed.

On February 24, the parties held a meet and confer on a variety of issues, including Geffen's search term proposal and discovery requests made by Sun. Sun explained that the search terms Sun used for collection were reasonable and that, given the discovery timeline and the manual component of the collection process, Sun could not continue engaging in unreasonable search-term negotiations months after collection had begun. Notably, during the same meet and confer, Geffen's counsel took the position that he would not conduct an additional email collection from Geffen's records because doing so would be too burdensome—the very principle Sun invoked in explaining why adding new search terms at this stage was unreasonable.

**Geffen's Search Terms Are Neither Relevant Nor Proportionate.** "[D]iscovery requests for electronically stored information should be as specific as possible." *Kairam* v. *West Side GI, LLC*, 2023 WL 3220159, at *1 (S.D.N.Y. Feb. 24, 2023) (quoting *The Sedona Principles*). Accordingly, "search terms should be tailored to the needs of the case and designed to capture that which is relevant without burdening parties with excessive, irrelevant data." *Id.* (citation omitted). It is Geffen's burden in the first instance to demonstrate relevance and proportionality of the requested discovery. *See GMO Gamecenter USA, Inc.* v. *Whinstone US, Corp.*, 2025 WL 722853, at *1 (S.D.N.Y. Mar. 5, 2025).

Sun's search terms were designed with those principles in mind. *See* Ex. A. Sun adopted the majority of the search terms Geffen originally proposed while applying reasonable date restrictions and limiters to focus the searches on documents relevant to the dispute.

By contrast, Geffen's additional proposed search terms are facially overbroad and not designed to target relevant documents. They include highly expansive terms like: *$80*, *80m*, *80 w/5 (USD OR million OR dollar)*, *deposit\**, *$10*, *10,4*, *10.5*, *10,5*, *Paris*, *Paint\**, *Cancel\**, *Art\**, *Stole\**, *Negotiat\**, *Warrant\**, *Guarant\**, *Auction*, *Buyer*, *Exchange*, *amend\**, *Shandong*, *Dezhou*, and *Christie\**. While Geffen contends such terms are relevant because they purportedly relate to *Le Nez* and Xiong's authority or criminal detention, none of them contain modifiers that would focus the results on those topics. Courts routinely reject overbroad search terms of this nature where they are not paired with meaningful limiters. *See Raine Grp. LLC* v. *Reign Cap., LLC*, 2022 WL 538336, at *3 (S.D.N.Y. Feb. 22, 2022) ("Broad, general search terms such as the ones the parties are using are typically not sufficiently targeted to find relevant documents. Modifiers are often needed to hone in on truly relevant documents."); *Kairam*, 2023 WL 3220159, at *2 (rejecting the use of the term *retir\** as "not proportional to the needs of the case, since the term is not limited in any way (*e.g.*, regarding certain individuals or in relation to certain other terms)").[1]

---

[1] One of the ***only*** terms for which Geffen proposes modifiers is *APENFT*—which Geffen "limits" with **24 terms**, including names of people affiliated with APENFT. This is akin to searching *David Geffen Company* and purporting to limit it with the names of the company's personnel. It is not designed to target documents relevant to this case.

Geffen's proposal also relies heavily on improper name-only searches, which likewise are not reasonably tailored to target relevant documents. For example, Geffen demands that Sun search for *Sydney*, *Xiong*, and *Zihan* (the English version of Xiong's Chinese first name) for all custodians except Xiong, and *Justin* on all of Xiong's custodial data. In other words, Geffen asks Sun to collect and review every document in the records for Sun's non-Xiong custodians that mentions Xiong, and every document in Xiong's various data sources that mentions Sun, regardless of the subject matter of the communication. That is obviously not a search designed to identify documents relevant to the issues in dispute. *Lam* v. *State St. Corp.*, 2025 WL 834885, at *2 (S.D.N.Y. Mar. 17, 2025) (denying motion to compel use of first and last names as a search terms and rejecting plaintiff's "speculat[ion] that the seven custodians at issue would only 'email about Plaintiff during the relevant period in ways that are []relevant to this dispute'").[2]

As another example, Geffen contends that Sun should search for the common first names *David* and *Robert* on grounds that David Martinez, David Geffen, and Robert Caldwell are individuals relevant to the dispute. But Sun has used both *Martinez* and *Geffen* as search terms, and searched *Caldwell* with a limiter—all of which are reasonable and proportionate for identifying relevant documents. Similarly, Geffen requests both *Laura* and *Chang* as search terms. "Laura" is the first name of an executive at TRON, and "Chang" is a common Chinese name. Sun's compromise term *Laura Chang* is reasonably designed to capture relevant documents and reduce false positives.

Geffen also seeks search terms for other business or personal names with no limiters. These include *Harder*, *Stonerock*, *Frackman*, *Caldwell*, *Loeb*, and *Black Anthem*. Sun's terms again cover these names and entities, with reasonable limiters to target documents relevant to the case. Geffen's request for broad searches without any limiters is again unreasonable and must be rejected. *See, e.g.*, *Sanders* v. *SUNY Downstate Med. Ctr.*, 2024 WL 4198355, at *5 (E.D.N.Y. Sept. 16, 2024) ("ESI searches of any and all communications between managers regarding a plaintiff are overly broad – such searches must be narrowed down to 'communications between specific individuals concerning specific topics that relate to [a] case.'").

**Geffen's Search Terms Impose Disproportionate Burden.** Sun's February hit report demonstrates the substantial burden that running Geffen's additional, overbroad search terms would impose. As that report reflects, Sun's compromise search terms already generated a review universe of approximately 90,000 documents,[3] all of which must undergo review by local counsel to ensure compliance with applicable foreign law. The need for foreign-law review is an unavoidable reality of discovery in this case and must be considered when assessing proportionality. *See*, *e.g.*, *GMO Gamecenter*, 2025 WL 722853, at *1 ("[C]ourts must determine 'the burden or expense of proposed discovery' in a 'realistic way.'"); *Winfield* v. *City of New York*, 2018 WL 1631336, at *4 (S.D.N.Y. Mar. 29, 2018) (explaining that "[e]ven relevant discovery

---

[2] Geffen complains that he ran searches for *Sydney* and *Xiong* in his own data. But that is a reasonable search. While records for Sun's custodians that reference Xiong could relate to a wide range of irrelevant matters, documents in Geffen's files referencing Xiong would be expected to relate only to the *Le Nez* transaction.

[3] Sun has recently been ordered to conduct searches of certain additional custodians, which will increase the total review universe far higher than 90,000 documents.

should be limited if it is disproportionate[,]" and the "court's responsibility" is to "reach[] a case-specific determination") (citations omitted).

Geffen attempts to minimize this burden by estimating the number of documents he claims would require review if his additional search terms were run. That estimate, however, is a red herring. Geffen's figures are derived from hit counts in Sun's December hit report, which does not reflect the full universe of documents that would have to be searched under Geffen's proposal. In particular, the December hit report covered a subset of Xiong's data—her cell phone and email account—and did not cover other sources that have been collected, including Xiong's computer. Nor did the December hit report include additional data sources the Court has since ordered Sun to collect. For these reasons, Geffen's assertion that the incremental review would be capped at roughly 11,000 documents (which itself would place Sun's review universe at approximately 100,000 documents) is not accurate.

Finally, as explained above, running additional search terms will require further manual collections from Sun's and Liu's custodial files. The initial extraction from Sun's device alone required three consecutive days of data collection. Geffen himself has objected to conducting additional collections on the ground that doing so would be too burdensome. Having taken that position, Geffen cannot credibly insist that it is proportional to require Sun to undertake further multi-day manual collections in order to run the overbroad search terms he now proposes.

**Sun Should Not Be Required to Review All Sun/Xiong Communications.** Geffen requests that Sun review *every* communication between Sun and Xiong over a multi-year period based on speculation that "[v]irtually *any* communication that Sun may have sent Xiong … could be critically relevant." ECF No. 109 at 5. That position is meritless.

Xiong worked as a freelancer for Sun and served as a liaison for certain of his commercial projects, including those involving art. *See* ECF No. 1 ¶¶ 36, 38. Her communications with Sun span a broader professional relationship and are not limited to the matters at issue here. Requiring Sun to review every communication between them would obviously sweep in a substantial volume of communications unrelated to the dispute. As explained above, courts reject such broad requests and insist on appropriate filters to focus collection on potentially relevant materials. *See, e.g.*, *Sanders*, 2024 WL 4198355, at *5; *Lam*, 2025 WL 834885, at *2; *Zhulinska* v. *Niyazov L. Grp., P.C.*, 2021 WL 5281115, at *5 (E.D.N.Y. Nov. 12, 2021) (refusing to "direct[] defendant to cull every email in which plaintiffs' names appear during the relevant time period").

Geffen attempts to justify his request for a review of all Sun/Xiong communications on the basis that Sun requested Geffen to review all his communications with Xiong, the Tunkls, and Ganymede. ECF No. 109 at 5. That is a non sequitur. Xiong, the Tunkls, and Ganymede are not part of Geffen's organization, and the communications with them in Geffen's files would be expected to concern issues related to the matters in dispute.

\*   \*   \*   \*

For the foregoing reasons, Geffen's requests for additional search terms and a review of all communications between Sun and Xiong should be denied.

                                              Respectfully submitted,

                                              /s/ *Samson A. Enzer*

                                              Samson A. Enzer

                                              /s/ *William L. Charron*

                                              William L. Charron

cc: All counsel of record (via ECF)

## EXHIBIT A
## SUN'S SEARCH TERM LIST

| Time Period Limitations | |
|---|---|
| Period A | Jan. 1, 2021 to May 13, 2025 |
| Period B | Sept. 1, 2023 to May 13, 2025 |
| Period C | Nov. 1, 2024 to May 13, 2025 |

| # | English | Mandarin | Date Range |
|---|---|---|---|
| 1 | Lenez | | Period A |
| 2 | Nez | | Period A |
| 3 | Nose | 鼻子 | Period A |
| 4 | Giacometti | 贾科梅蒂 | Period A |
| 5 | Geffen | | Period A |
| 6 | Ithaka | | Period A |
| 7 | Ganymede | | Period A |
| 8 | Tunkl | | Period A |
| 9 | Cole | | Period A |
| 10 | Warhol | 沃霍尔 | Period A |
| 11 | Three Self Portraits | 三幅自画像 | Period A |
| 12 | Picasso | 毕加索 | Period A |
| 13 | Femme OR Couchee OR Couchée | 裸女 w/3 躺臥 | Period A |
| 14 | Kaws | 卡伍斯 | Period A |
| 15 | Kimpsons | | Period A |
| 16 | Lerner | | Period B |
| 17 | Ralph | | Period B |
| 18 | "Laura Chang" | 张丽 | Period B |
| 19 | Martinez | | Period B |
| 20 | Rauschenberg | 劳森伯格 | Period B |
| 21 | Loeb AND (Sydney OR Xiong) | 乐博 AND (Sydney OR 熊) | Period B |
| 22 | Caldwell AND (Sydney OR Xiong) | Caldwell AND (Sydney OR 熊) | Period B |
| 23 | Harder AND (Sydney OR Xiong) | Harder AND (Sydney OR 熊) | Period C |
| 24 | Stonerock AND (Sydney OR Xiong) | Stonerock AND (Sydney OR 熊) | Period C |
| 25 | Frackman AND (Sydney OR Xiong) | Frackman AND (Sydney OR 熊) | Period C |
| 26 | [Title of Painting] | [Title of Painting] | Period B |

1

| #  | English | Mandarin | Date Range |
|----|---------|----------|------------|
| 27 | "Jasper Johns" | "贾斯珀·约翰斯" | Period B |
| 28 | [Title of Painting] |  | Period B |
| 29 | APENFT AND ("Le Nez" OR Nose OR Giacometti OR Geffen OR Tunkl OR Lerner OR Martinez OR Ganymede OR Ithaka OR Laura OR Sydney OR Rauschenberg OR Johns OR [Title of Painting] OR [Title of Painting]) | APENFT AND (鼻子 OR 贾科梅蒂 OR 劳森伯格 OR 约翰 OR [Title of Painting]) | Period A |
| 30 | Justnft |  | Period A |
| 31 | Sculpture | 雕塑 | Period A |
| 32 | Steal | 偷窃 | Period C |
| 33 | Stolen | 被偷的 | Period C |
| 34 | Thief | 小偷 | Period C |
| 35 | Theft | 盗窃 | Period C |
| 36 | Lawsuit | 官司 | Period C |
| 37 | Affidavit | 宣誓书 | Period C |
| 38 | Bill w/3 Sale | 买卖合同 | Period B |
| 39 | Authoriz* w/10 Agree* | 授权 w/10 协议 | Period B |
| 40 | 10.5 AND ("Le Nez" OR Nose OR Giacometti OR Geffen OR Tunkl OR Lerner OR Martinez OR Ganymede OR Ithaka OR "Laura Chang" OR Sydney OR Rauschenberg OR "Jasper Johns" OR [Title of Painting] OR [Title of Painting]) | 10.5 AND (鼻子 OR 贾科梅蒂 OR 劳森伯格 OR "贾斯珀·约翰斯" OR [Title of Painting] OR 熊子涵 OR 张丽) | Period B |
| 41 | 10,5 AND ("Le Nez" OR Nose OR Giacometti OR Geffen OR Tunkl OR Lerner OR Martinez OR Ganymede OR Ithaka OR "Laura Chang" OR Sydney OR Rauschenberg OR "Jasper Johns" OR [Title of Painting] OR [Title of Painting]) | 10,5 AND (鼻子 OR 贾科梅蒂 OR 劳森伯格 OR "贾斯珀·约翰斯" OR [Title of Painting] OR 熊子涵 OR 张丽) | Period B |

| # | English | Mandarin | Date Range |
|---|---------|----------|------------|
| 42 | 10,4 AND ("Le Nez" OR Nose OR Giacometti OR Geffen OR Tunkl OR Lerner OR Martinez OR Ganymede OR Ithaka OR "Laura Chang" OR Sydney OR Rauschenberg OR "Jasper Johns" OR [Title of Painting] OR [Title of Painting]) | 10,4 AND (鼻子 OR 贾科梅蒂 OR 劳森伯格 OR "贾斯珀·约翰斯" OR [Title of Painting] OR 熊子涵 OR 张丽) | Period B |
| 43 | $10 AND ("Le Nez" OR Nose OR Giacometti OR Geffen OR Tunkl OR Lerner OR Martinez OR Ganymede OR Ithaka OR "Laura Chang" OR Sydney OR Rauschenberg OR "Jasper Johns" OR [Title of Painting] OR [Title of Painting]) | $10 AND (鼻子 OR 贾科梅蒂 OR 劳森伯格 OR "贾斯珀·约翰斯" OR [Title of Painting] OR 熊子涵 OR 张丽) | Period B |
| 44 | Int* w/10 Bank w/10 Chicago | | Period B |
| 45 | 071 006 651 | | Period B |
| 46 | 820 629 8921 | | Period B |
| 47 | R&W | | Period B |
| 48 | Condition w/3 Report | 品相 w/3 报告 | Period B |
| 49 | Compound Art | 综合艺术 | Period B |
| 50 | "Black Anthem" AND ("Le Nez" OR Nose OR Giacometti) | "Black Anthem" AND (鼻子 OR 贾科梅蒂) | Period A |
| 51 | ParisChrist* | | Period A |
| 52 | Sotheb* | 苏富比 | Period A |
| 53 | Helu* | | Period A |
| 54 | Arrest* | 逮捕 | Period C |
| 55 | Police | 警察 | Period C |
| 56 | Detention | 拘留 | Period C |
| 57 | Detain* | | Period C |

3