# CAHILL GORDON & REINDEL LLP

32 OLD SLIP
NEW YORK, NY 10005

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM

| | | |
|---|---|---|
| 900 16th STREET, N.W. Suite 500<br>WASHINGTON, DC 20006<br>(202) 862-8900 | 221 W. 10th STREET<br>WILMINGTON, DE 19801<br>(302) 884-0000 | 20 FENCHURCH STREET<br>LONDON EC3M 3BY<br>+44 (0) 20 7920 9800 |

**VIA ECF**                                                                                   May 18, 2026

The Honorable Gary Stein
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 702
New York, New York 10007

Re: ***Sun* v. *Geffen* (Case No. 25 Civ. 00995) (AT) (GS)**

Dear Judge Stein:

Together with Pryor Cashman LLP, we represent Plaintiff Justin Sun ("Sun"), and respectfully oppose the motion (the "Motion") filed by Defendants David Geffen and Ithaka Trust (together, "Defendants") asking Your Honor to compel certain discovery concerning a Chinese law enforcement investigation of Sydney Xiong ("Xiong"). *See* ECF No. 153. The Motion should be denied or, at a minimum, narrowed to permit discovery that is relevant and proportionate to the needs of the case.

This case centers on whether Xiong stole and fraudulently transferred Sun's highly-valuable sculpture, *Le Nez*, to Defendants without Sun's awareness and approval. The evidence will show that numerous red flags made it clear to Defendants—or should have—that *Le Nez had* been stolen from Sun and that Xiong had no authority to sell it. Defendants will eventually, and unavoidably, have to answer this evidence.

In an effort to avoid the merits, Defendants have resorted to distraction. They have tried to create countless discovery sideshows, most of which are rooted in the fact that it is simply not as straightforward to obtain discovery from parties and non-parties—let alone from criminal authorities—in China as it is in the U.S. Most recently, Defendants have stitched together a collateral dispute about Xiong's criminal detention in China, and the police report that led to her detention.

In March, Defendants served Sun with a slew of discovery demands that were as voluminous as they were overbroad: 98 requests for admission ("RFAs"), after already serving 57 RFAs; a fifth set of requests for the production of documents, containing 18 additional requests (some with subparts); 9 requests to inspect documents or devices; and a fourth set of interrogatories, including 6 interrogatories with numerous independent subparts. These requests rest on the new and completely unsupported assertion that Sun never reported Xiong's theft of *Le Nez* to the police and fabricated the police report concerning the theft—allegations that Sun categorically denies.

Geffen's detour is an irrelevant distraction from the claims in this case. The police report, and Xiong's detention, were not pled in Sun's Complaint and are not elements of his claims. Rather, Defendants injected those issues into this case by alleging in their Answer and Counterclaims that Sun did not honestly believe he was the victim of a theft because if Sun had believed that *Le Nez* had been stolen, he would have filed a police report. In response to that baseless theory, Sun denied Defendants' allegations that Sun never filed a police report and that Xiong had not been arrested. *See* ECF No. 22 ¶ 21. Sun also averred, on information and belief, that Xiong had been detained at the Dezhou Detention Center since February 2025 in connection with her role in Defendants' unlawful acquisition of *Le Nez*. *Id.* at Prefatory Statement. That allegation was based on information from Jeffrey Li ("Li"), of the Xizheng law firm, who told Sun that he filed a police report and provided Sun with a copy of it. He also told Sun that Xiong was detained.

The only potential relevance of the police report is Sun's state of mind as described above. As Sun will state when responding to *reasonable and proportionate* discovery requests, he at all times intended to report the theft of *Le Nez* by Xiong to Chinese authorities, and believed, based on Li's statements and the Case Acceptance Form that Li sent him concerning the theft,[1] that Li had done so. Defendants have proffered no evidence that Sun intended or believed otherwise, and if Sun was given inaccurate information by Li about the police report or Xiong's detention, that still does not bear on the core issue in the case, namely Xiong's authority to sell *Le Nez* to Geffen.

In that context, Defendants' expansive March discovery requests—both in subject matter and volume—seemed calculated solely to harass and impose needless burden on Sun. During the parties' April 22 meet and confer, Sun repeatedly asked Defendants why they questioned the veracity of the police report. Defendants refused to say, even though (as was only later revealed to Sun) they already had the March 24, 2026 Declaration of Attorney Zhai Xiujuan (ECF No. 153-5) ("Zhai Declaration") on which their Motion now depends. Defendants chose instead to sandbag Sun by withholding their purported evidence until May 4, 2026, when they filed their Motion with the Court.

Even before the Motion was filed, Sun had agreed to provide reasonable discovery about what he knows concerning the police report and Xiong's detention. In his initial responses to Geffen's requests concerning the police report, Sun agreed to produce materials within his control related to these issues. Sun also responded to *21* of Defendants' most recent 75 RFAs. Sun is also willing to respond to a limited additional number of RFAs and interrogatories to put this ancillary issue behind us and focus on the issues actually relevant to the case. Specifically, Sun is willing to also respond to RFAs 70, 72, 98, 137-38, and Interrogatories 11-13; this includes Interrogatory 11, which Defendants have referred to in their Motion as their "principal interrogatory." Motion at 6.

Defendants' gamesmanship has prevented Sun from fully investigating their allegations about the police report and Xiong's current status, and thus Sun is not presently in a position to vouch for the authenticity of the police report. However, in the limited time available, Sun was

---

[1] Li provided both an initial version of the police report and then an amended version specifying the value of *Le Nez*. The final version was produced, after which we learned of the initial version, which we will produce by the May 25, 2026 discovery production deadline.

able to retain China-based lawyers to begin an investigation into Defendants' accusations. As shown in the accompanying Declaration of Attorney Haoyang Zhong (Exhibit 1) ("Zhong Declaration"), to date, this investigation has already raised serious questions about the accuracy of Defendants' recent claims and the Zhai Declaration. For example, Defendants' Zhai Declaration reports hearsay from Officer Huang, whose signature is on the police report concerning Xiong, alleging that Officer Huang supposedly "stated unequivocally that the case does not exist, that he had never authorized the use of his signature on the Case Acceptance Registration Form, and that he had never accepted any report of the matter described therein." Zhai Decl. ¶ 8. But when Sun's China-based lawyers asked Officer Huang about that purported statement, *he denied making it*, and said he only told Zhai that she was not a person connected to the case and so he would not disclose to her information concerning the case. Zhong Decl. at 2.

In addition, the Zhai Declaration states that Officer Liang of the Dezhou Detention Center said "Ms. Xiong is not currently detained at the Dezhou Detention Center" (Zhai Decl. ¶ 16), and Defendants point to Xiong's social media posts as supposed evidence she is not in prison. Motion at 3. But whether Xiong is currently in prison is beside the point, and Officer Huang confirmed to Sun's China-based lawyers that Xiong *was* detained at least at some point in China. Zhong Decl. at 2.

Even if Defendants' report were accurate—and the evidence already indicates it is not—Defendants still would not be entitled to irrelevant, disproportionate discovery, forensic inspection of devices, or documents outside of Sun's control. As explained below, each set of requests served in March 2026 is objectionable on multiple independent grounds. Accordingly, and for the reasons set forth below, the Motion should be denied or, at a minimum, narrowed to discovery that is relevant and proportional to the needs of the case.

## I.    The Court Should Deny Defendants' Request for the Disputed Documents and Device Inspections

Defendants served 18 document requests concerning the police report. ECF No. 153-8. They also served 9 requests for inspection in order to examine devices they speculate may have been used to fabricate the police report. ECF No. 153-9. To satisfy those requests, Sun agreed to produce non-privileged materials related to the Xiong police proceedings that are in his custody or control, including documents stored on mobile devices. The remaining disputes regarding Defendants' document requests and requests for inspection are whether Sun must (i) produce documents in Li's control; (ii) search for police reports concerning matters unrelated to Xiong's misconduct; and (iii) permit forensic inspection of devices related to the Xiong police proceedings. Defendants are not entitled to any of that discovery.

### A.    Defendants Have Not Shown Sun Controls Li's Documents or Devices

Defendants argue that Sun has control over Li's documents because Li previously provided legal services to Sun. That is not enough. Sun does not have the "practical ability" to require Li, a non-party in China, to produce documents, let alone make his mobile devices available for inspection.

-4-

As "[t]he party seeking discovery," Defendants have "the burden of showing that the documents are within the other party's control." *Coventry Capital US LLC* v. *EEA Life Settlements Inc.*, 334 F.R.D. 68, 73 (S.D.N.Y. 2020). "Documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Owen* v. *Elastos Found.*, 2023 WL 2537287, at *2 (S.D.N.Y. Mar. 16, 2023). When a party retains a non-party, courts look to whether there is a sufficient ongoing relationship between the two such that the party has the "practical ability" to obtain the non-party's documents. *See GenOn Mid-Atlantic, LLC* v. *Stone & Webster, Inc.*, 282 F.R.D. 346, 355 (S.D.N.Y. 2012), *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21, 2012) (finding practical ability where an ongoing consultant relationship made compliance with a timely request likely); *Coventry Capital*, 334 F.R.D. at 73 (control can be shown "over the third-party's documents based on a demonstrated ability to access those documents in the ordinary course of business").

Defendants have not made that showing. They point to Sun's reference to Li as his "legal consultant" and "local counsel," and Li's role in filing the police report. Motion at 4. But Li's assistance occurred more than a year ago and shows, at most, discrete past legal services.[2] It does not show that Sun has a contractual right to obtain Li's documents, an ability to access those documents in the ordinary course, or any other relationship that would permit Sun to compel Li to produce his documents, much less turn over his mobile device. To be clear, we have asked Li to produce materials, he declined, citing the fact that any relevant materials may be subject to Chinese secrecy law. Sun does not have the practical ability to compel him to do more.

Any difficulty Defendants face in obtaining Li's documents is of their own making. Defendants have known since last year that Sun does not control Li, and, although the Court did not resolve this issue, it concluded that Li could not be compelled to sit for a deposition. ECF No. 70 at 2. If Defendants wanted to pursue documents from Li, they could have used international treaty procedures, including the Hague Convention. *See Tiffany (NJ) LLC* v. *Qi Andrew*, 276 F.R.D. 143, 156 (S.D.N.Y. 2011), *aff'd sub nom. Tiffany (NJ) LLC* v. *Andrew*, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011) (rejecting argument that Hague Convention was not viable process for China discovery).[3] They know how, as they have filed five Hague requests in this case, including two directed at entities in Hong Kong. *See* ECF Nos. 32, 37, 102, 115, 122.

### B.    Police Reports Concerning Other Matters Are Irrelevant

Defendants also seek police reports concerning other matters that Li reported to the Dezhou Public Security Bureau on behalf of Dezhou Xizhoudao Network Technology Co., Ltd. and that "primarily involved virtual currency." Motion at 4, Zhai Decl. ¶ 11. They claim they need the reports to "ascertain whether Sun and Li used the Earlier Police Reports to fabricate" the Xiong police report. Motion at 4. The request should be denied.

---

[2] Attorney Zhong was retained to conduct an investigation of Defendants' claims. The fact that Li was present during portions of attorney Zhong's recent trip to Dezhou (Zhong Decl. at 1) does not show that Sun can compel Li to produce discovery in this case or do anything else that Li is not inclined to voluntarily do.

[3] China is a party to the Hague Convention for taking evidence. *See* Obtaining Evidence in Civil and Commercial Matters, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.ht ml (last visited May 16, 2026).

First, the Zhai Declaration lacks details sufficient to identify the requested documents.[4]

Second, Sun should not be required to produce police reports concerning matters that are admittedly unrelated to the theft of *Le Nez* and that contain confidential and sensitive information about other criminal proceedings. Defendants do not even attempt to argue that the conduct addressed in those reports relates to this case. Instead, they speculate that the reports may have been used to somehow fabricate the Xiong police report. This is clearly a fishing expedition, to distract from the actual issues of this case. Even if Defendants had shown the Xiong police report was fabricated (and they have not), they offer no reason (aside from speculation) to believe these other reports were involved. The Motion calls them "Earlier Police Reports," but the Zhai Declaration does not even say they predate the Xiong report. Zhai Decl. ¶ 11. Courts "should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses." *Collens* v. *City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004). Defendants' request should be denied.

## C.    Defendants Have Not Made the Required Showing for Forensic Inspections

Sun has already agreed to produce non-privileged documents relevant to the Xiong police proceedings from mobile devices within his custody or control. Defendants nevertheless seek forensic inspections of those devices. They also filed a separate motion to compel regarding this inspection request. ECF No. 155. For the reasons explained in Sun's opposition to that motion (ECF No. 158), Defendants are not entitled to this discovery. Moreover, as indicated, Sun believed in good faith that Li had reported the theft of *Le Nez* and there is no evidence to the contrary; thus, Defendants have not demonstrated a basis to conduct a forensic inspection of Sun's devices. And, as to Li, Sun has no control over Li's devices.

## II.    Defendants' Requests for Admission Exceed What the Federal Rules Permit

After initially serving 57 RFAs, Defendants propounded an additional 98 RFAs, 75 of which relate to the Xiong police proceedings. *See* Sun's RFA Responses. These 75 RFAs are excessive and improperly seek discovery of disputed facts rather than admissions designed to narrow the issues for trial. (Nonetheless, as noted above, to resolve these issues, Sun is willing to respond to a limited number of these RFAs.)

Taken together, Defendants' RFAs exceed one hundred requests, a volume courts have found abusive in analogous circumstances. *See, e.g., Joseph L.* v. *Connecticut Department of Children and Families*, 225 F.R.D. 400, 403 (D. Conn. 2005) (granting protective order because 163 RFAs, many of which contained multiple subparts, were "excessive to the point of being abusive"); *BAT LLC* v. *TD Bank, N.A.*, 2018 WL 3626428, at *6 (E.D.N.Y. July 30, 2018) (157 requests on top of a previous 69 were "overly burdensome and not proportional to the needs of the case").

In addition, the RFAs were propounded for an improper purpose. RFAs are designed to narrow disputes about known facts, they are not a discovery device for uncovering unknown information. *See, e.g.*, *Republic of Turkey* v. *Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018)

---

[4] To the extent the requested reports can actually be located, Sun reserves all other objections, including those based on any privacy interests or disclosure restrictions under Chinese law.

("'[R]equests for admission are used to establish admission of facts about which there is no real dispute.' . . . [W]here requests for admission are not designed to identify and eliminate matters on which the parties agree, but to seek information as to [a] fundamental disagreement at the heart of the lawsuit, or are unduly burdensome, a court may excuse a party from responding to the requests.") (citation omitted). Defendants argue that the Zhai Declaration supplies evidence supporting the requested admissions. But at most, the declaration creates disputed factual issues for trial, the antithesis of "facts about which there is no real dispute." *See Republic of Turkey*, 326 F.R.D. at 399.

## III.    Sun's Interrogatory Responses Should Be Limited to Twenty-Five and to Information Within His Control

Defendants' interrogatories, including discrete subparts, exceed the 25-interrogatory limit in Federal Rule of Civil Procedure 33.

Federal Rule of Civil Procedure 33(a)(1) allows "no more than 25 written interrogatories, including all discrete subparts" absent stipulation or court order. Courts regularly find that interrogatories with multiple independent subparts, like Defendants' interrogatories, exceed that limit. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.* v. *Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010) (subparts may count as discrete questions when not factually interconnected and dependent).

Defendants have served several such multi-part interrogatories. For example, Interrogatory 16 asks Sun to provide the factual basis for any denial of the 155 RFAs. *See* Sun's Interrogatory Responses at 8-9. Each denied RFA is a discrete topic, so Interrogatory 16 functions as a separate interrogatory for each denial. *See Ritchie*, 273 F.R.D. at 369. Similarly, Interrogatory 14 asks Sun to identify "all Responsive Documents that were Deleted," the date of deletion, who deleted it, and any recovery efforts. *Id.* at 8. This single interrogatory contains four discrete subparts. *See Spectrum Dynamics Medical Ltd.* v. *General Electric Co.*, 2021 WL 1660684, at \*1 n.1 (S.D.N.Y. Apr. 28, 2021). Defendants offer no persuasive explanation for why their interrogatories comply with Rule 33. Sun has already answered four discrete interrogatories (when including subparts). *See* Exhibit 2, Sun's Responses & Objections to Geffen's First Set of Interrogatories. Sun should not be required to answer more than 21 additional interrogatories.

Sun's obligation to respond is also limited to information within his control. Defendants argue that Sun must provide information known to Li. Motion at 6. But Sun cannot be required to answer interrogatories based on the knowledge of a non-party he does not control. *See Rivera* v. *United Parcel Service*, 325 F.R.D. 542, 546 (S.D.N.Y. 2018) ("A party served with interrogatories under Rule 33 has a duty to 'compile information within his control'[.]") (citation omitted). As explained above (*see supra* Part I.A), Sun does not control Li and so cannot provide interrogatory responses based on Li's knowledge.

That said, Sun is willing to provide responses to Interrogatories 11-13 based on his personal knowledge and information within his control.

Respectfully submitted,

/s/ *Samson A. Enzer*
 Samson A. Enzer

/s/ *William L Charron*
William L. Charron

cc: All counsel of record (via ECF)