**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

YUCHEN JUSTIN SUN,

Plaintiff and Counterclaim Defendant,

-against-

DAVID GEFFEN and ITHAKA TRUST,

Defendants and Counterclaim Plaintiffs.

-and-

*LE NEZ*, a sculpture,

Defendant-in-rem.

---------------------------------------------------------------X

**25 Civ. 995 (AT) (GS)**

**OPINION & ORDER**

**GARY STEIN, United States Magistrate Judge:**

Defendants and Counterclaim Plaintiffs David Geffen and Ithaka Trust ("Geffen") have filed letter-motions to compel Plaintiff and Counterclaim Defendant Yuchen Justin Sun ("Sun") to: (1) provide discovery concerning a police report that Sun claims to have filed in China relating to the sculpture at issue in this case (Dkt. No. 153); and (2) make available for inspection a laptop and other devices belonging to nonparty Sydney Xiong that are in the possession of Sun's counsel, as well as Sun's own devices (Dkt. No. 155). Sun submitted letters opposing both motions (Dkt. Nos. 158, 167), Geffen submitted replies (Dkt. Nos. 164, 175), and both parties submitted supplemental letters (Dkt. Nos. 185-1, 196). The Court heard oral argument on the motions on June 23, 2026. (*See* Dkt. No. 230, Transcript of

Argument, June 23, 2026 ("Tr.")).

For the reasons set forth below, Geffen's motion to compel discovery with regard to the police report in China is **GRANTED IN PART** and **DENIED IN PART**, and Geffen's motion to inspect Xiong and Sun's devices is **DENIED**.

## LEGAL STANDARDS

### A. Motion to Compel Discovery

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In evaluating what information is discoverable, the court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (cleaned up).

The party moving to compel discovery "bears the initial burden of demonstrating that the information sought is relevant and proportional." *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18 Civ. 3025 (PGG) (VF), 2022 WL 2817141, at *1 (S.D.N.Y. July 19, 2022); *see also Citizens Union of City of N.Y.*

*v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) ("Plaintiffs, as the parties seeking discovery from [defendant], bear the initial burden of proving that the information and documents sought are relevant and proportional to the needs of the case."). Once the moving party has made this showing, "the burden shifts to the opposing party to justify curtailing discovery." *Sportvision*, 2022 WL 2817141, at *1.

**B. Motion to Inspect Electronic Devices**

"'Forensic examinations of computers and cell phones are generally considered a drastic discovery measure because of their intrusive nature.'" *Liederbach v. NYU Langone Hosps.*, No. 24 Civ. 742 (JAV), 2025 WL 1952440, at *2 (S.D.N.Y. July 16, 2025) (quoting *Lebenns v. Frost Prods.*, No. 21 Civ. 11155 (JLR) (JW), 2023 WL 8280405, at *3 (S.D.N.Y. Nov. 30, 2023)). "It is well-established that 'a party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests.'" *Aviles v. S&P Glob., Inc.*, No. 17 Civ. 2987 (JPO) (KHP), 2021 WL 2077932, at *4 (S.D.N.Y. May 24, 2021) (quoting *Piccone v. Town of Webster*, No. 09-cv-6266T, 2010 WL 3516581, at *8 (W.D.N.Y. Sept. 3, 2010)).

"Forensic examination can be appropriate, however, where 'there is reason to believe that a litigant has tampered with the [device] or hidden relevant materials' or [there is other] 'improper conduct on the part of the responding party.'" *Liederbach*, 2025 WL 1952440, at *2 (quoting *Aminov v. Berkshire Hathaway Guard Ins. Cos*, No. 21 Civ. 479 (DG) (SJB), 2022 WL 818944, at *1 (E.D.N.Y. Mar. 3,

2022)); *see also Freeman v. Deebs-Elkenaney*, No. 22 Civ. 2453 (LLS) (SN), 2023 WL 2535195, at *2 (S.D.N.Y. Mar. 16, 2023) ("Requests to inspect an adversary's computer are granted only under limited circumstances 'when there is reason to believe that a litigant has tampered with the computer or hidden relevant materials . . . or when the possession or use of the computer is an element of the parties' claims or defense.'" (quoting *Lifeng Chen v. New Trend Apparel, Inc.*, No. 11 Civ. 324 (GBD) (MHD), 2012 WL 4784855, at *1 (S.D.N.Y. Oct. 2, 2012)). As a general rule, therefore, "[a]bsent a 'demonstrated widespread destruction or withholding of relevant information,' courts are unlikely to find the burden and expense of a proposed computer inspection justified.'" *Freeman*, 2023 WL 2535195, at *2 (quoting *Uddin v. O'Brien Rest. Holding Co.*, LLC, No. 16 Civ. 2098 (RJS), 2017 WL 11674895, at *2 (S.D.N.Y. Aug. 23, 2017)).

**DISCUSSION**

As relevant background to the motions before the Court, this case arises from a January 2024 agreement for the sale of an Alberto Giacometti sculpture, *Le Nez*, to Geffen by a foundation controlled by Sun. Sun claims that the transaction was fraudulent and that Xiong stole the sculpture by causing it to be sold without Sun's authorization and forging Sun's signature on deal documents. (*See* Complaint, Dkt. No. 1 ¶¶ 1–12, 82). Sun alleges that Xiong "confessed to the crime" in a declaration she signed in December 2024, a copy of which was provided to Geffen prior to this lawsuit by Sun's attorneys. (*Id.* ¶¶ 2, 98, 100; Counterclaims, Dkt. No. 20 ¶¶ 203–04 & Exs. 3 & 4). In response, Geffen charges that this lawsuit is a "sham." (Dkt.

No. 20 ¶ 1). According to Geffen, Xiong sold *Le Nez* with Sun's full authorization and then, after the deal turned out to be less favorable than they had hoped, Sun and Xiong "contrived this fraudulent lawsuit, hoping to pressure Geffen into rescinding the deal or paying Sun." (*Id.*).

The pre-suit demand letter from Sun's counsel, dated December 23, 2024, stated that "[a] police report regarding this matter has been filed with law enforcement in Beijing, China[.]" (Dkt. No. 20 Ex. 3). That statement turned out to be incorrect. When asked for it in discovery, Sun produced a police report (the "Police Report"), but that report was dated January 13, 2025, three weeks after counsel's letter, and states that it was made to the police in Dezhou, China, which is more than 180 miles from Beijing. (Dkt. No. 153 Ex. 2). The report was purportedly made verbally on Sun's behalf by Jeffrey Li (also known as Li Renye), a Chinese national who is affiliated with the Shanghai Xi Zheng law firm in China. (*Id.* Ex. 4; Dkt. No. 167 at 2).

Geffen claims that the Police Report is a fabrication, and supports that claim with, *inter alia*, a declaration from a local attorney in Dezhou retained by Geffen. The attorney claims he spoke with a police officer named in the Police Report and that the officer denied knowledge of the Police Report and asserted that he did not authorize his signature to appear on the report. (Dkt. No. 153 & Ex. 5; *see also* Dkt No. 185-1 at 1–4 (arguing that additional evidence confirms that the Police Report is a fabrication and that Sun directed it be fabricated)). Sun responds with a declaration from his own local attorney, who claims that he, too, spoke with the

officer in question and that the officer denied telling Geffen's attorney what Geffen's attorney has represented. (Dkt. No. 167 at 3 & Ex. 1; *see also* Dkt. No. 196 at 2–3 (contending that Geffen has offered no credible evidence that Sun knew about and directed Li to fabricate the Police Report)).

The parties also vigorously dispute whether Xiong was ever detained and imprisoned by the authorities in Dezhou, as alleged, "upon information and belief," in Sun's Answer to Geffen's Counterclaims. (Dkt. No. 22 at 1; *see* Dkt. No. 153 Ex. 5 (declaration from Geffen's local attorney asserting that Xiong was never detained in Dezhou); Dkt. No. 167 Ex. 1 (declaration from Sun's local attorney asserting that Xiong was detained at some point in China)). Xiong's current whereabouts appear to be unknown. However, at some point Xiong provided Sun with her laptop and two mobile phones, which are now in the possession of Alvarez & Marsal in Hong Kong, a document vendor retained by Sun. (Dkt. No. 155 at 2; Tr. at 62:12–19, 72:17–19, 74:7–10). The devices have been forensically imaged and Sun has produced documents from the devices, but Geffen claims that the production is incomplete. (Dkt. No. 155 at 2; Dkt. No. 158 Ex. 1 at 3–4; Tr. at 75:2–6).

**A. Discovery Regarding the Police Report**

Although Sun has produced the Police Report and various documents relating to it, including an amended version of the Police Report specifying the value of *Le Nez* (Dkt. No. 167 at 2 n.1), Geffen seeks additional information through production of documents, responses to requests to admit, and answers to interrogatories. These requests focus in particular on information from Li, the individual whom Sun

alleges made the Police Report to the authorities in Dezhou. (*See* Dkt. No. 153 at 3–6).

As an initial matter, Sun disputes the significance of any of this material, characterizing Geffen's motion as "an irrelevant distraction from the claims in this case" that "seem[s] calculated solely to harass and impose needless burdens on Sun." (Dkt. No. 167 at 2). Sun argues that whether or not Li actually filed a police report is irrelevant, as what matters is whether Sun "intended to report the theft of Le Nez by Xiong to Chinese authorities" and "believed . . . that Li had done so." (*Id.*). As it made clear at the June 23 conference, the Court rejects this argument. (*See* Tr. at 4:3–6). Sun has affirmatively asserted that he reported Xiong's alleged crime to Chinese authorities, as a way of buttressing his claim that Xiong acted without his authorization in selling *Le Nez*—the central issue in this lawsuit. Geffen has raised legitimate questions going to the *bona fides* of that assertion. Li concededly was acting for Sun. If Li prepared the Police Report merely to create a false impression that Sun initiated criminal proceedings against Xiong, there would be reason to believe that Sun was aware of and/or directed those actions. Without intimating any view as to whether the Police Report was fabricated or not, or if so whether Sun was aware of that fact or not, the Court finds that Geffen plainly is entitled to explore these issues in discovery.

The Court therefore turns to Geffen's specific requests for additional

discovery relating to the Police Report.

**1. Document Requests**

Geffen demands that Sun produce documents in Li's possession that are responsive to Geffen's document requests concerning the Police Report. Geffen argues that, for purposes of Rule 34 of the Federal Rules of Civil Procedure, documents held by Li are in Sun's control. (Dkt. No. 153 at 4). Sun argues otherwise, claiming that he lacks the practical ability to compel Li to provide documents and that Li is therefore outside Sun's control for purposes of Rule 34. (Dkt. No. 167 at 4). On this issue, the Court agrees with Geffen.

Rule 34 requires parties to produce documents and electronically stored information ("ESI") within their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Evidence in a party's 'control' has been interpreted to mean evidence that the party has the legal right, authority, or practical ability to obtain by virtue of its relationship with the party in possession of the evidence." *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010) (collecting cases), *aff'd*, 271 F.R.D. 55 (S.D.N.Y. 2010). Thus, "[a] party may be ordered to produce documents where that party has the legal right to obtain the documents, even though that party retains no copy, and regardless of whether the documents are beyond the jurisdiction of the court." *M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in

the possession of a non-party." (quoting *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994) (internal quotation marks omitted))).

More specifically, and as relevant here, "'the clear rule is that documents in the possession of a party's current or former counsel are deemed to be within that party's possession, custody and control'" under Rule 34. *Lifeguard Licensing Corp. v. Kozak*, No. 15 Civ. 8459 (LGS) (JCF), 2016 WL 3144049, at *5 (S.D.N.Y. May 23, 2016) (quoting *MTB Bank v. Fed. Armored Express*, No. 93 Civ. 5594 (LBS), 1998 WL 43125, at *4 (S.D.N.Y. Feb. 2, 1998)). Similarly, "documents held by [a] party's agent are deemed to be in a party's control" under Rule 34. *Am. Rock Salt Co. v. Norfolk S. Corp.*, 228 F.R.D. 426, 457 (W.D.N.Y. 2004); *see also Annunziato v. Collecto, Inc.*, 304 F.R.D. 360, 363 (E.D.N.Y. 2015) (finding that where a non-party was an agent of a party, the principal-agent relationship established the necessary control such that party-principal had the "right, authority or practical ability to obtain [ ] documents from [the] non-party to the action" (citation omitted)); *Mazzei v. Money Store*, No. 01 Civ. 5694 (JGK) (RLE), 2014 WL 3610894, at *4 (S.D.N.Y. July 21, 2014) ("A principal is deemed in control of the documents held by its agents."); *In re Glob. Power Equip. Grp. Inc.*, 418 B.R. 833, 843 (Bankr. D. Del. 2009) ("Courts have held consistently that documents in possession of the responding party's agent are within the party's control."); *McKesson Corp. v. Islamic Rep. of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999) (noting that "the control required for Rule 34 purposes may be established by virtue of a principal-agent relationship").

It appears that Li is not a practicing lawyer, or at least was not acting as a

lawyer in connection with his work for Sun. (*See* Tr. at 41:7–10 (stating that, although Li had been a prosecutor in China, he "wasn't [Sun's] attorney" and "is no longer barred," and that Sun has not designated communications between Sun and Li as privileged)); Dkt. No. 153 Ex. 4 (describing Li as a "legal consultant")). Nonetheless, Li is affiliated with the Xi Zheng law firm and, in making the Police Report, acted pursuant to an engagement letter between Sun and the Xi Zheng law firm. (Tr. 38:25–39:6, 41:19–42:7; Dkt. No. 153 Ex. 4). Li also has continued to act on Sun's behalf, including by participating in the visit made by Sun's new Chinese counsel to Dezhou in May 2026 to investigate the allegations made by Geffen's Chinese counsel. (Dkt. No. 167 Ex. 1 at 3; Tr. 48:6–7). Moreover, Li has maintained an email address through a Sun-controlled company, TRON. (Tr. 48:11–49:1). Geffen also notes that, according to Sun's privilege log, Li provided Sun with a video relevant to this case in March 2026. (Dkt. No. 186-1 at 4; Dkt. No. 196 at 6).

Given these facts, it is clear that Li, through the Xi Zheng law firm, has acted and is continuing to act as Sun's agent in connection with the Police Report and that Sun should have both a legal right and the practical ability to obtain documents from Li relating to his work for Sun. *See In re Glob. Power Equip. Grp.*, 418 B.R. at 843 ("An agent cannot withhold from the principal information that is relevant to the subject matter of the agency relationship." (citing Restatement (Third) of Agency (2006) §§ 8.01 and 8.11)).[1] Consequently, those documents are

[1] The Court recognizes that the relationship between Sun and the Xi Zheng law firm and Li is likely governed by Chinese law rather than by U.S. law. Nevertheless, the Court looks to American agency

presumptively within Sun's control under Rule 34 and Sun therefore is obligated to obtain and produce those documents. *See, e.g.*, *Annunziato*, 304 F.R.D. at 363 (ordering party to obtain records from its agent after finding that it had the practical ability to obtain the records); *Chevron Corp. v. Donzinger*, 296 F.R.D. 168, 196–97 (S.D.N.Y. 2013) (finding that Ecuadorian lawyers and non-lawyers who worked on defendants' behalf were defendants' agents and subject to their practical control, requiring production of documents in agents' possession).

Sun's counsel represents that "we have asked Li to produce materials" but "he declined," suggesting that Sun cannot be ordered to do more, especially since Li is in China. (Dkt. No. 167 at 4; *see also* Tr. at 40:13–21 (arguing that all Sun can do is "ask" Li for documents)). Sun is mistaken. It is well settled, as noted above, that "[a] party may be ordered to produce documents" where that party has the legal right or practical ability to obtain the documents, "regardless of whether the documents are beyond the jurisdiction of the court." *M.L.C., Inc.*, 109 F.R.D. at 136. The Court hereby orders Sun to obtain the relevant documents from Li.

To comply with the Court's order, Sun must do more than merely "ask" Li to comply. Rather, Sun is obligated to assert his legal rights to the documents and exert whatever practical ability and influence he may have to access the documents, including, for example, by exercising any influence he may have based on his

principles in the absence of any indication that the law of any other applicable jurisdiction is materially different. *See E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 305 n.190 (S.D.N.Y. 2000), *aff'd*, 4 F. App'x 81 (2d Cir. 2001).

affiliation with the Xi Zheng law firm[2] and by threatening, if necessary, to terminate his relationship with Li and/or the Xi Zheng law firm. Should he fail to produce the documents and fail to provide an adequate explanation as to why he was unable to obtain the documents despite making good faith and reasonable efforts to do so, Sun may be subject to sanctions under Fed. R. Civ. P. 37. *See, e.g.*, *Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023); *Prince v. Jason D. Boroff Assocs., PLLC*, No. 24 Civ. 2706 (GS), 2026 WL 1266247, at *3–5 (S.D.N.Y. May 8, 2026).

The responsive documents required to be obtained from Li include any documents on his laptop or other electronic devices. Sun objects that Li's electronic devices are not within Sun's control. (Dkt. No. 167 at 3). That may be true of the devices themselves; ordinarily, it would be hard to see how the personal devices of a non-employee agent or attorney would be deemed to be within the control of the principal or client. But the *documents* on those devices, to the extent they concern the work done by Li for Sun, are deemed to be within Sun's control, and Sun's obligation to obtain those documents as described above extends to those documents. How the documents are extracted from Li's devices will have to be worked out between Sun, Li, and possibly the Xi Zheng law firm.[3]

The parties also dispute whether Sun should be required to produce other

---

[2] As Geffen notes, in addition to being a client, press reports have described Sun as a senior advisor or consultant to the Xi Zheng law firm. (*See* Dkt. No. 153 at 2 & n.3); Binance Square, "Justin Sun, senior consultant of Shanghai Xi Zheng Law Firm, spoke at the seminar on 'Investigation, Prosecution and Evidence Collection of Crimes Involving Virtual Currency,'" June 10, 2025 (available at https://www.binance.com/en/square/post/25416591714362) (last accessed Sept.14, 2026).

[3] Although Geffen asks that Sun be directed to provide Li's devices for inspection (Dkt. No. 175 at 3), the Court declines to do so, for two reasons. First, Geffen does not represent that he met and conferred with Sun about this requested relief before asking the Court to order it. (*See* § B, *infra*).

police reports that Li submitted to Dezhou authorities on behalf of one of Sun's entities related to virtual currency. (*See* Dkt. No. 153 Ex. 5 at 3). Geffen argues that these reports should be produced so that he can compare them to the Police Report and ascertain whether they were used to fabricate the Police Report. (Dkt. No. 153 at 4). Sun argues that the other police reports are irrelevant as they concern matters unrelated to *Le Nez* and contain confidential and sensitive information about other criminal proceedings. (Dkt. No. 167 at 5).

The Court agrees that the other police reports should be produced. An examination of those reports could yield evidence that the Police Report is not genuine, for example by showing that the purported signatures of the police officers on the Police Report may have been lifted from other reports. To guard against confidentiality concerns, Sun may produce these reports pursuant to the Protective Order in this action. (Dkt. No. 31). Beyond this, it appears that substantive information on the reports regarding the crimes being reported would be entirely irrelevant to any of the issues in this case. Consequently, Sun is permitted to redact such information, provided it is truly unrelated to the events at issue here and would not be necessary or useful for the forensic comparison that Geffen wishes to undertake.[4]

**2. Requests for Admission**

Geffen propounded 75 requests for admission ("RFAs") relating to the Police

---

Second, Geffen has provided no authority suggesting that the Court would have the power to order Sun to obtain physical possession of Li's personal devices.

[4] Sun states that he "reserves all other objections" to production of the other police reports, including those based on "disclosure restrictions under Chinese law." (Dkt. No. 167 at 5 n.4). To be clear, the

Report and Xiong's alleged detention in Dezhou. (*See* Dkt. No. 153 at 5 & Ex. 7). Sun responded to 17 of these RFAs (RFAs 88, 89, 93, 95, 96, 99, 100, 102, 103, 105, 106, 108, 109, 119, 120, 123 and 133) and states that he is willing to respond to another five (RFAs 70, 72, 98, 137 and 138).[5] (*See* Dkt. No. 167 at 2; Dkt. No. 153 Ex. 7). As to the remaining RFAs, Sun objects generally on the grounds of relevance and that the RFA "improperly seeks to elicit information and obtain discovery of facts not already known to Defendants rather than to narrow the issues to be resolved." (*See, e.g.*, Dkt. No. 153 Ex. 7 at 7 (response to RFA 58)).

Many of the disputed RFAs ask Sun to admit facts allegedly discovered during Geffen's investigation of the circumstances surrounding the Police Report and Xiong's alleged detention in Dezhou. For example, Geffen asks Sun to "[a]dmit" that the police officers whose signatures appear on the Police Report "did not sign the Police Report" (*id.* at 7, 8–9, 10 (RFAs 58, 62, 65)), "[a]dmit" that Sun "created the Police Report without the involvement of any employees of the Dezhou Public Security Bureau" (*id.* at 12–13 (RFA 72)), "[a]dmit" that Li "did not visit the police on 13 January 2025," and report *Le Nez* as stolen (*id.* at 14 (RFA 76)), "[a]dmit" that Sun has "not reported Xiong by name" to any criminal authority (*id.* at 36 (RFA

---

Court's ruling does not decide other objections that Sun may have to production of the other reports or preclude him from raising them, if appropriate, at a later date.

[5] Sun claims he responded to 21 of the RFAs (Dkt. No. 167 at 2), but based on the Court's review, that tally includes responses to four RFAs (RFAs 112, 113, 117 and 118) that are not among the 75 RFAs related to the Police Report. (*See* Dkt. No. 153 at 5). The Court recognizes that in his responses to certain of the 17 RFAs, Sun limited the response to his own knowledge while disclaiming any responsibility to respond based on the knowledge of others, including Li. (*See, e.g.*, Dkt. No. 153 Ex. 7 at 23 (response to RFA 99)).

130)), and so forth.

"Unlike interrogatories, document requests, and depositions, which are designed to discover information that is not known to the requesting party, requests for admissions are not discovery devices and cannot serve as a substitute for those discovery methods." *A.P. v. CHA Health Sys., Inc.*, No. 19 Civ. 3826 (WFK) (CLP), 2020 WL 13890245, at *3 (E.D.N.Y. Aug. 14, 2020). "'Instead, requests for admission are used to establish admission of facts about which there is no real dispute.'" *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (quoting 7 *Moore's Federal Practice* § 36.02[1] (3d ed. 2013)). True, "a party may not object to an RFA 'solely on the ground that the request presents a genuine issue for trial.'" *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, No. 20 Civ. 4416 (CS) (AEK), 2022 WL 1617711, at *6 (S.D.N.Y. May 23, 2022) (quoting Fed. R. Civ. P. 36(a)(5)). But "where requests for admission are not designed to identify and eliminate matters on which the parties agree, but to seek information as to fundamental disagreement at the heart of the lawsuit, or are unduly burdensome, a court may excuse a party from responding to the requests." *Republic of Turkey*, 326 F.R.D. at 399.

Here, it is evident that Geffen's RFAs concerning the Police Report are not designed to identify and eliminate issues on which the parties currently agree. Instead, Geffen makes clear that he wants to compel Sun (or his counsel) to talk with Li and then provide answers to the RFAs based on the information Li provides. (Dkt. No. 175 at 3–4; Tr. at 31:5–20). In effect, then, Geffen seeks to use his RFAs

as a discovery tool to obtain information (via Sun) from Li. This is "not consonant with the purpose of Rule 36." *Republic of Turkey*, 326 F.R.D. at 400.

Thus, the Court denies Geffen's motion to compel with respect to the following RFAs: 58–69, 71, 73–77, 88–92, 97, 101, 104, 107, 110–11, 124–32, 134–36 and 140–41. However, certain of the other RFAs in question on this motion seek admissions as to whether *Le Nez* has ever been in China and whether Sun has instituted any civil litigation against Xiong: specifically, RFAs 78–87, 94, and 139. Those RFAs appear to be proper and Sun is hereby directed to respond to them.

**3. Interrogatories**

Geffen also moves to compel responses to certain of his Interrogatories regarding the Police Report, including Interrogatory Nos. 11–13. (Dkt. No. 153 at 5–6). These Interrogatories seek detailed descriptions of how the Police Report was created and then obtained by Sun (No. 11); all communications between Sun and government officials regarding Xiong's criminal case in Dezhou (No. 12); and Sun's involvement with a corporate entity, "Dezhou Hongsheng," including why that entity was referenced in the Police Report (No. 13). (Dkt. No. 153 Ex. 10 at 6–8).

In his responses to these Interrogatories, Sun declared that he would not answer them. (*Id.*). In his response to Geffen's motion to compel, however, Sun states that he is willing to answer these Interrogatories—but only on the basis of his "personal knowledge and information within his control." (Dkt. No. 167 at 6). Sun argues that he "cannot be required to answer interrogatories based on the knowledge of a non-party he does not control," such as Li. (*Id.*). Geffen, by contrast,

argues that Li is within Sun's control and that the Court can and should order Geffen to obtain information from Li in answering Interrogatories 11–13. (Dkt. No. 153 at 6; Dkt. No. 175 at 4).

"A party served with interrogatories under Rule 33 has a duty to 'compile information within his control' and provide 'all information available' in his responses." *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 546 (S.D.N.Y. 2018) (quoting *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 309 F.R.D. 1, 14 (D.D.C. 2015)); *see also Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 894 (S.D.N.Y. 1999) ("A party cannot plead ignorance to information that is from sources within its control." (citation omitted)). "Indeed, a party is 'charged with knowledge of what its agents know and the contents of its available records.'" *Shamis*, 34 F. Supp. 2d at 894 (quoting *American Rockwool, Inc. v. Owens–Corning Fiberglas Corp.,* 109 F.R.D. 263, 266 (E.D.N.C.1985)); *see also* 8B, Wright & Miller, *Federal Practice & Procedure* § 2177 (3d ed. Apr. 2026 update) ("In answering interrogatories, a party is charged with knowledge of what its agents know, or what is in records available to it, or even, for purposes of Rule 33, information others have given it on which it intends to rely in its suit."). How these principles apply in a particular case is necessarily fact-dependent.

Normally, the duty to provide "information available" to the party is discussed in the context of a corporation or other entity responding to interrogatories. That is understandable in light of Rule 33's text. Rule 33 provides that interrogatories must be answered "(A) by the party to whom they are directed;

or (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1). The language about providing "information available" is found only in the second prong, which by its terms is limited to corporations and other entity defendants. No such language appears in the first prong, which pertains to parties who are natural persons, and some courts have held that Rule 33 "does not require an individual party upon whom interrogatories are served to make inquiry as to facts." *Economou v. Butz*, 466 F. Supp. 1351, 1363 (S.D.N.Y. 1979). Nonetheless, most courts have found even individual parties to be under a duty to make inquiry of others. *See, e.g.*, *Rivera*, 325 F.R.D. at 546; *Shamis*, 34 F. Supp. 2d at 894; *All Assets*, 309 F.R.D. at 14; *Alvarado-Herrera v. Acuity*, No. 222CV00438CDSNJK, 2022 WL 18108429, at *2 (D. Nev. Nov. 8, 2022) (individual plaintiff "must make a reasonable inquiry in responding to interrogatories, including inquiring with his agents"), *aff'd*, 2023 WL 5035323 (D. Nev. Aug. 4, 2023). And Sun concedes that he must answer based not only on his personal knowledge but also on "information within his control." (Dkt. No. 167 at 6).

The question remains whether information known to Li should be deemed within Sun's control for this purpose. As noted above, the Court has concluded that *documents* possessed by Li as Sun's agent are within Sun's control for purposes of Rule 34. To the extent that Geffen asks Sun to answer Interrogatories 11–13 based on documents obtained or to be obtained from Li, the Court agrees that this would

be appropriate. But Geffen seeks to go beyond this; he argues that Sun (or, presumably, Sun's counsel) "should speak to his agent Li" and incorporate Li's information in Sun's interrogatory responses. (Dkt. No. 153 at 6).

The circumstances here support a finding that Li is within Sun's control for purposes of providing information for Sun's interrogatory responses. Li has acted on Sun's behalf for some period of time, including previous instances of reporting alleged criminal conduct to authorities in China. Those services are provided under the auspices of the Xi Zheng law firm. Nothing in the record indicates that Sun has severed his relationship with the Xi Zheng law firm or with Li. To the contrary, the record indicates that Li has continued to act on Sun's behalf this year, including by providing information relevant to this lawsuit. (*See* Dkt. No. 175 at 1; Dkt. No. 185-1 at 4). Li has maintained (and may still maintain) an email address through one of Sun's companies. (Tr. at 48:18–22). Accordingly, Li is a source of information—including, but not limited to, documents—within Sun's control that Sun must consult in answering Interrogatories 11–13. *See Shamis*, 34 F. Supp. 2d at 893–94 (requiring plaintiff to respond to interrogatories seeking information about the production of documents originating in Hong Kong, after plaintiff was unable to provide any meaningful information at his deposition, and noting that plaintiff would be required to consult "sources within his control," as a party is "charged with charged with knowledge of what its agents know" as well as the contents of available records (citations omitted)); *Aiges v. Ironshore Specialty Ins. Co.*, No. 15-CV-61300, 2015 WL 12564324, at *2 (S.D. Fla. Dec. 9, 2015) ("[W]hen an

appropriate interrogatory is propounded, Plaintiff must give the information known to him personally, or through his attorney, investigators or other agents or representative employed by him.").

Sun argues that, since Geffen has made serious accusations attacking Li's credibility, Geffen cannot at the same time reasonably demand that Sun incorporate statements by Li into Sun's sworn interrogatory responses. (Dkt. No. 196 at 6). Of course, Sun need not and should not attest to the accuracy of any interrogatory response that he believes to be untruthful. But the Court is not dictating what *answers* Sun should give in his interrogatory response or requiring that they incorporate Li's information. The only question at this juncture is whether Sun's *process* for answering the interrogatories must include an attempt to obtain information from Li. The Court determines that it must, as Li is an agent within Sun's control with knowledge of the relevant events.

Were Li to be a deposition witness in the case, the Court might well conclude that answering Geffen's interrogatories would not be a "more practical method," *see* Local Civ. R. 33.3(b)(1), of obtaining the information Geffen seeks about the Police Report and the other interrogatory topics. As has long been recognized, interrogatories are generally an inferior method of obtaining discovery as compared to depositions. *See Howard v. States Marine Corp.*, 1 F.R.D. 499, 500 (S.D.N.Y. 1940) ("Examination by interrogatories is both more cumbersome and less efficient than oral examination before trial[.]"). However, Li, who is in China, has declined to appear for a deposition in this case, and for the reasons described in its December

19, 2025 Order, the Court had considerable doubts as to whether it could compel Li to sit for a deposition. (*See* Dkt. No. 70). Geffen did not serve the interrogatories in question until March 26, 2026, after that ruling. (*See* Dkt. No. 153 Ex.10 at 9). Under the circumstances, proceeding via interrogatory is a more practical, if not the only, way for Geffen to obtain proper discovery on these issues. If, however, Li were to agree now to provide sworn testimony at a deposition, whether in the United States, China, or Hong Kong, or remotely, that could potentially obviate the need for Sun to respond to Geffen's interrogatories.

Finally, Geffen also moves to compel Sun to answer Interrogatory No. 16. (Dkt. No. 153 at 5). That Interrogatory asks that, to the extent Sun denies any of Geffen's RFAs, Sun "identify the evidence upon which [Sun's] denial is based, including the individuals with knowledge of that evidence and the documents constituting any such evidence." (Dkt. No. 153 Ex. 10 at 8–9). Sun argues that this Interrogatory in effect functions as a separate interrogatory for each RFA that Sun denies, and as a result is unduly burdensome and exceeds the 25-interrogatory limit contained in Fed. R. Civ. P. 33(a)(1). (Dkt. No. 167 at 6). Geffen offers no meaningful argument in defense of Interrogatory No. 16, except to note that it is similar to an interrogatory Sun previously served on Geffen. (Dkt. No. 175 at 4). That is not a sufficient basis for an order compelling discovery. (*See* Dkt. No. 85 at 5 ("Discovery is not a 'tit for tat' process." (quoting *Scelsi v. Habberstad Motorsport Inc.*, No. 19 Civ. 4315 (FB), 2021 WL 6065768, at *3 (E.D.N.Y. Dec. 22, 2021) (citation omitted)). The Court therefore denies Geffen's motion as it relates to

Interrogatory No. 16.

**B. Inspection of Xiong's and Sun's Devices**

Geffen's original motion sought an order granting him access to inspect Xiong's laptop and mobile phones and, "[a]lternatively," to inspect Sun's own laptop and phone. (Dkt. No. 155 at 1, 3). Geffen's additional submissions then made clear that he is seeking to inspect both Xiong and Sun's devices. (Dkt. No. 164 at 3; Dkt. No. 185-1 at 6).

Geffen's motion to inspect Sun's devices is summarily denied. Geffen's motion does not claim that his counsel met and conferred regarding access to Sun's own devices (*see* Dkt. No. 155 at 1 n.1 (stating only that the parties "met and conferred regarding Geffen's request to inspect Xiong's devices")), and Sun's letter in opposition states that the parties did not meet and confer regarding Sun's devices (*see* Dkt. No. 158 at 3). In his reply, Geffen states only that counsel "discussed" Geffen's demand to inspect Sun's devices, referencing an email exchange between counsel on October 23, 2025 (Dkt. No. 164 at 3 & Ex. 3), more than six months before Geffen filed his motion. Plainly this email exchange was insufficient to discharge Geffen's meet and confer obligation, nor does Geffen even claim (at least in so many words) that it was sufficient. The Court has previously admonished Geffen for filing discovery motions without engaging in good faith meet and confer efforts as required by Rule 37(a)(1) and my individual rules, and promised to reject any other such motions "without further consideration." (Dkt. No. 138 at 2–3). The

Court makes good on that promise here.[6]

In support of his motion to inspect Xiong's devices, Geffen unleashes a barrage of accusations of misconduct against Sun. These include, *inter alia*, that Sun "fabricated Xiong's detention in Dezhou," that Sun "fraudulently has procured Xiong's absence," that "Sun's Police Report is a fake," that Sun has "selectively withheld responsive documents," that Sun has admitted "delet[ing] critical communications in this case," that Sun "has a documented record of falsifying records," and that newly produced documents show that "the Police Report is a forgery and that Sun himself directed its fabrication." (Dkt. No. 155 at 1–2 & n.2; Dkt. No. 185-1 at 1).

The persuasive force of this argument does not match the stridency with which it is made. In order to obtain the relief he seeks, Geffen must make an adequate showing that Sun has destroyed or intentionally withheld relevant information on *Xiong's* devices. *See Freeman*, 2023 WL 2535195, at *2 (forensic inspection generally requires "a demonstrated widespread destruction or withholding of relevant information" (citation omitted)). But the bulk of Geffen's accusations involve alleged misconduct prior to the commencement of this litigation (or unrelated to this litigation) and have nothing to do with Xiong's devices. Moreover, Xiong's devices are in the possession of a reputable document vendor and Sun's local counsel and U.S. counsel have been reviewing and producing material on

---

[6] To spare the parties and the Court any unnecessary additional motion practice, the Court also makes clear that it would have rejected Sun's motion on the merits as it relates to Sun's devices, essentially for the same reasons that it rejects Sun's request to inspect Xiong's devices.

the devices. (*See* Dkt. No. 158 at 3; Tr. at 66:15–68:7; 74:7–14). There is no indication that Sun has destroyed or spoliated any information on Xiong's devices. And Geffen's claim that Sun's counsel has been withholding relevant information on Xiong's devices lacks support in the record.

In particular, Geffen posits that Sun's counsel must be withholding relevant documents because Sun has not produced as many communications between Sun and Xiong as Geffen believes should exist; because Geffen received from a third party relevant chat messages involving Sun and Xiong from 2021 that were not in Sun's production; and because Sun's hit reports for two search terms ("Rauschenberg" and "Jasper Johns," the artists for two of the works sold by Geffen as part of the transaction in question) suggest Sun should have produced more responsive documents containing those search terms. (Dkt. No. 155 at 2). But Sun provides reasons why Geffen's conjecture is unfounded. (Dkt. No. 158 at 2). Geffen questions Sun's explanations, and may well have a basis for demanding further information from Sun's counsel about these perceived discrepancies. (*See* Dkt. No. 164 at 1–3). But Geffen's assertions fall short of demonstrating that the only possible, or even likely, reason why more documents have not been produced is that Sun's counsel has been improperly withholding them. *See Aviles*, 2021 WL 2077932, at *4 ("Mere skepticism that an adversary will not produce all relevant information from its electronic files does not warrant Court intervention."); *Piccone*, 2010 WL 3516581 at *9 (denying motion to compel forensic inspection and rejecting argument that plaintiff "cherry picked" evidence based on "the virtual absence of

emails sent by her to other employees from her production"); *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12CV2472-AJB KSC, 2013 WL 5212013, at *2 (S.D. Cal. Sept. 13, 2013) (denying motion to compel forensic inspection due to lack of "concrete evidence of concealment, destruction of evidence, or failure to preserve documents and information," despite plaintiff's argument that it was "implausible" that defendant had no responsive emails related to discovery request).[7]

Indeed, Geffen's supplemental letter relies heavily on so-called "new evidence" that Geffen contends confirms that Sun directed the fabrication of the Police Report. (*See* Dkt. No. 185-1 at 1–4). Sun disputes Geffen's characterization of the evidence (*see* Dkt. No. 196 at 2–4), but more importantly for purposes of Geffen's motion for inspection, this new evidence comes from *Sun's own document productions*. That fact tends to confirm that Sun's counsel are properly discharging their professional responsibilities to produce documents in this case, not willfully violating or ignoring their responsibilities, and thus undermines rather than supports Geffen's request for inspection of Xiong's devices.

Nor do Geffen's cited authorities support his request. In *Schreiber v. Friedman*, No. 15 Civ. 6861 (CBA) (JO), 2017 WL 11508067 (E.D.N.Y. Aug. 15, 2017), the parties had initially agreed that certain defendants' computers would be imaged and preserved, and the computers were later reviewed by plaintiff's forensics expert. *Id.* at *1, *2. The forensics expert's review showed, *inter alia*, that

[7] *Cf. Electrified Discounters, Inc. v. MI Techs., Inc.*, No. 3:13CV1332 RNC, 2015 WL 2383618, at *3–4 (D. Conn. May 19, 2015) (granting forensic inspection of plaintiff's devices where only one email was produced in response to defendant's discovery requests, but plaintiff's witnesses testified that they communicated regularly via email).

defendants had "concealed, altered, and tampered with the computers that the Court ordered to be disclosed, imaged, and preserved," had "used false and fraudulent privilege log entries to conceal thousands of non-privileged documents," and had taken "improper steps to actively prevent [plaintiff] from timely receiving imaged computer material." *Id.* at *2. At that point, the magistrate judge ordered the defendants and certain co-defendants to produce all their computers and devices for imaging by plaintiff's expert. *Id.* at *3. That ruling was then affirmed by the district judge "as an appropriate discovery order in light of evidence of spoliation." *Id.* at *5. The facts here simply do not provide the level of evidentiary support that warranted inspection in *Schreiber*. And in *Ceglia v. Zuckerberg*, No. 10-CV-569A(F), 2013 WL 1208558 (W.D.N.Y. Mar. 26, 2013), the plaintiff *agreed*, as part of an Electronic Asset Protocol, to have his electronic devices imaged and reviewed by defendants' forensics expert. *Id.* at *1.

Accordingly, Geffen has failed to make a sufficient showing that the drastic remedy of inspection of Xiong's devices, *see Liederbach*, 2025 WL 1952440 at *2, is warranted. Geffen's motion is therefore denied.

## CONCLUSION

For the reasons stated above, Geffen's motion to compel further discovery relating to the Police Report is **GRANTED IN PART** and **DENIED IN PART**, and Geffen's motion for inspection of electronic devices is **DENIED**. The Clerk of Court is respectfully requested to terminate the motions pending at Docket Numbers 153

and 155.

**SO ORDERED.**

DATED: New York, New York
September 15, 2026

GARY STEIN
United States Magistrate Judge